IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

STEPHAN CORDOVA,

    Plaintiff,

v.                                                                       Civ. No. 11-806 GBW/ACT

CITY OF ALBUQUERQUE,
RAY SCHULTZ, CARLOS ARGUESTA,
AARON HEYMAN, MATTHEW
HOISINGTON, KEVIN KEES,
JAMES FOX, and KENNETH NEIBERGER,

    Defendants.

**ORDER GRANTING CITY DEFENDANTS' MOTION FOR SEPARATE TRIALS**

This matter comes before the Court on City Defendants' Motion for Separate Trials and accompanying briefing. *Docs. 73, 80, 85.* The Court, being fully advised, finds the Motion well-taken and grants it.

**I.**     **BACKGROUND**

On July 30, 2008, Plaintiff was at his mother's house on Mesa Arriba Avenue NE in Albuquerque, New Mexico when he developed a medical issue, prompting his sister-in-law, Kristen Cordova, to call 911. *Doc. 1* ¶¶ 4-5. When the paramedics arrived, Ms. Cordova told them that Plaintiff did not want medical assistance and that he had a gun. *Id.* ¶¶ 5-6. The paramedics left the house and notified the police. *Id*. ¶ 7. Defendants Kevin Kees, Matthew Hoisington, James Fox, and Kenneth Neiberger were among the officers sent to the scene. *Id*. ¶ 8. Soon after they arrived, Plaintiff left the house. *Id.* ¶

1

13; *Doc. 57* ¶ 13.  At some point during the ensuing confrontation between Plaintiff and the police officers, Plaintiff was shot.  *Doc. 1* ¶ 18; *Doc. 57* ¶¶ 25-26.  Plaintiff was taken to the University of New Mexico Hospital.  *Doc. 1* ¶ 22.

Later on the same day, after Plaintiff was hospitalized, Defendant Aaron Heyman requested and received an arrest warrant for Plaintiff based on the allegation that Plaintiff, during the confrontation with police, pointed a gun at the officers.  *Id.* ¶ 21.  Plaintiff alleges that Defendant Heyman attempted to obtain a statement from him five days later on August 4, 2008, while Plaintiff was still hospitalized.  *Id*. ¶ 25.  Plaintiff also alleges that Defendants Heyman and Carlos Argueta prevented Plaintiff's family from visiting him in the hospital from July 31, 2008 to August 4, 2008.  *Id*.

On August 20, 2008, Plaintiff was transported to the Metropolitan Detention Center (MDC), allegedly in violation of a court order.  *Id*. ¶ 39.  Plaintiff's family bonded Plaintiff out of MDC on August 22, 2008.  *Id*. ¶ 41.  During his time in MDC, Plaintiff claims he did not receive adequate medical care and had to return to the hospital immediately upon release.  *Id*. ¶¶ 42-43.

Plaintiff brought six counts against the individual defendant police officers ("Defendant Officers"): (1) unlawful seizure under the Fourth Amendment; (2) use of excessive force under the Fourth Amendment; (3) violation of Plaintiff's right of association under the First Amendment; (4) violation of his right to counsel under the Sixth Amendment; (5) violation of his right to bail and due process under the

2

Fourteenth Amendment; and (6) wrongful prosecution. *Id.* ¶¶ 43-73. The parties have since stipulated to the dismissal of Count IV, the Sixth Amendment claim. *Doc. 66*. Plaintiff's seventh count is against the City of Albuquerque ("City") and Albuquerque Police Chief Ray Schultz for municipal and supervisory liability based on the allegation that their policies "were a moving force behind the violations stated in Counts I, III, and VI" ("municipal and supervisory liability claims"). *Doc.* 1 ¶ 73.

Defendants filed the instant motion on October 22, 2012 seeking to bifurcate the trial of this case. *Doc. 73*. Defendants propose that Plaintiff's claims against the individual defendant officers be tried first and that the municipal and supervisory claims be tried in a second, separate trial. *Id*.

## II. THE LEGAL STANDARD FOR BIFURCATION

Federal Rule of Civil Procedure 42(b) permits trying issues and claims separately "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). District courts have broad discretion in deciding whether to bifurcate a trial. *United States ex rel. Bahrani v. ConAgra, Inc.*, 624 F.3d 1275, 1283 (10th Cir. 2010). Bifurcation is appropriate when the "interests [in Rule 42(b)] favor separation of issues and the issues are clearly separable." *Angelo v. Armstrong World Indus., Inc.*, 11 F.3d 957, 964 (10th Cir. 1993). "Bifurcation is often in the interest of efficiency and judicial economy when the resolution of one claim may obviate the need to adjudicate one or more other claims." *Desmare v. New Mexico*, No. 07-199, 2007 WL 5231690, at *2 (D.N.M.

Aug. 14, 2007) (citing *Mandeville v. Quinstar Corp.*, 109 F. App'x 191, 194 (10th Cir. 2004)). "[H]owever, bifurcation is an abuse of discretion if it is unfair or prejudicial to a party." *Angelo,* 11 F.3d at 964.

### III. ANALYSIS

In this case, bifurcation of the individual defendant officer claims and the municipal and supervisory liability claims is appropriate because it will not prejudice Plaintiff and it will further judicial efficiency.

#### A. Prejudice

Defendants argue that trying the individual officer and municipal claims together would prejudice both Defendant Officers and Defendants City and Schultz because evidence introduced for the municipal and supervisory liability claims could influence the jury's determinations of the individual claims and vice versa. *Doc.* 73 at 8-11. Plaintiff argues that the evidence regarding the municipal and supervisory liability claims "will not tend to make the individual officers more or less guilty in the minds of the jury, but will only serve to clarify the larger, more important issues in this case." *Doc. 80* at 6. To the extent that jurors could be confused by the different standards of liability for individual and municipal defendants, Plaintiff contends that the problem can be cured with jury instructions. *Id*. at 7.

The Court agrees with Defendants. Establishing municipal and supervisory liability under § 1983 requires proving that the individual officers committed the

4

constitutional violations at issue in accordance with municipal policy or practice. *See Monell v. Dep't of Social Serv.*, 436 U.S. 658, 694-95 (1978). To prove that an unwritten policy or practice exists, a plaintiff must show that the conduct is "continuing, persistent and widespread." *Carney v. City and County of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008). This generally entails "evidence suggesting that similarly situated individuals were mistreated by the municipality in a similar way." *Id*. Thus, in this case, Plaintiff would have to put forth evidence of other incidents of police officers unlawfully seizing suspects by brandishing weapons, conspiring to formulate false reports, and preventing visitation of hospitalized suspects by family members.[1] This evidence is likely to be highly prejudicial – jurors may inappropriately consider other incidents of police misconduct when determining Defendant Officers' liability. *See Foster v. Bernalillo County Bd. of Comm'rs*, No. 10-1075, at 5 (D.N.M. Feb. 10, 2012) (doc.

---

[1] Plaintiff alleges that the policies of Defendants City and Schultz were the moving force behind the violations described in Counts I, III, and VI. *Doc. 1* ¶ 73; *Doc. 80* at 1. These counts allege unlawful seizure by the police accomplished by the brandishing of their weapons during the July 30, 2008, confrontation; violation of Plaintiff's First Amendment right to associate by preventing his family from visiting him in the hospital; and wrongful prosecution. *Doc. 1* ¶¶ 43-46, 50-55, 58-63. Plaintiff's complaint does not allege that Defendants City and Schultz were involved in the violations described in Counts II and V (use of excessive force and violation of Fourteenth Amendment rights to bail and due process by delaying arraignment and disobeying a court order). *See id.* ¶¶ 47-49, 58-63. Plaintiff's response suggests that he is challenging four allegedly unconstitutional City policies: (1) allowing police officers to conspire to give false reports on officer shootings; (2) preventing visitation of suspects by family prior to giving a statement; (3) holding suspects in custody for an unreasonably long time before arraignment; and (4) violating court orders by removing defendants from the hospital and sending them to jail. *Doc. 80* at 4. The first of these policies goes to Plaintiff's wrongful prosecution claim (Count VI) and the second goes to his First amendment claim (Counts III). However, the third and fourth appear relevant only to Count V – Plaintiff's Fourteenth Amendment due process claim. Because Plaintiff does not claim that Defendants City and Schultz were involved in the violations alleged in Count V, those alleged policies would not be relevant to this case.

140) (bifurcating individual and municipal claims when plaintiff alleged that correctional officers failed to protect him in violation of the Eighth Amendment and county's failure to train and adequately staff prison led to violation); *Ybarra v. City of Albuquerque*, No. 03-1130, at 2 (D.N.M. Dec. 8, 2004) (doc. 98) (bifurcating individual excessive force and wrongful prosecution claims from municipal and supervisory liability claims); *Gutierrez v. Hackett*, No. 02-0582, at 27 (D.N.M. Sept. 18, 2003) (doc. 88) (bifurcating individual and municipal claims when plaintiff alleged use of police dog was excessive force and city police dog policies contributed to injury); *Smith v. City of Albuquerque*, No. 01-0416, at 3 (D.N.M. Oct. 8, 2002) (doc. 178) (same); *Rael v. City of Santa Fe*, No. 97-0950, at 5 (D.N.M. July 1, 1998) (doc. 57) (bifurcating individual excessive force and false imprisonment claims and municipal failure to train and supervise claims).

Plaintiff suggests that jury instructions can clarify the different standards of review for the various Defendants and prevent jury confusion and prejudice. Plaintiff's municipal and supervisory liability claims, however, go to only three of the five counts brought by Plaintiff. Trying all five causes of action together presents too great a risk that the jury will consider evidence introduced on the municipal and supervisory claims when deciding the other two claims. Moreover, each of Plaintiff's claims targets a different set of individual Defendant Officers. The jury will have to be instructed to consider only the evidence introduced regarding each particular officer when

determining that officer's liability. Additional evidence regarding municipal and supervisory liability will make it that much more difficult to disentangle the evidence relevant to each individual defendant. While jury instructions may be sufficient to prevent prejudice in some cases, the issues in this case manifestly warrant bifurcation.

Although "bifurcation is an abuse of discretion if it is unfair or prejudicial to a party," *Angelo*, 11 F.3d at 964, Plaintiff has not shown that he will be prejudiced by trying the individual and municipal and supervisory liability claims separately. Contrary to Plaintiff's contention that division of the claims will obscure the more important issues in the case, separate trials will allow him to directly and clearly address the broader policy issues in a trial solely focused on municipal and supervisory liability. If the policies in question are relevant and admissible in the trial of Defendant Officers, Plaintiff can raise them there. But the inability to present otherwise inadmissible evidence to establish the backdrop of Defendant Officers' alleged misconduct is not prejudicial. *See Desmare*, 2007 WL 5231690, at *9 (noting that plaintiff's desire to present evidence of defendant's past bad acts "is not a 'prejudice' as much as a tactical advantage that will be lost in fairness to [defendant]").

### B. Convenience, expediency, and economy

Defendants argue that bifurcation will be more convenient and expedient because, if Plaintiff's claims against the Defendant Officers fail, there will be no need for a trial on the claims against Defendants City and Schultz. *Doc. 73* at 5 & n.3. Because

7

proving the municipal claims would require introducing evidence of municipal policymaking and prior incidents of police misconduct, trying those claims will be arduous for both the Court and the parties and should be avoided if possible. *Id*. at 5-7. In response, Plaintiff maintains that a single trial is by definition more convenient and economical. *Doc. 80* at 3-4.

Courts in this district frequently bifurcate trials when the outcome of the first trial could obviate the need for a second trial. *See Desmare*, 2007 WL 5231690, at *2 (citing *Mandeville v. Quinstar Corp.*, 109 F. App'x 191, 194 (10th Cir. 2004)). This is especially true in § 1983 cases in which a plaintiff brings claims against both individual defendants and a municipality. *See, e.g., Lomeli v. City of Albuquerque*, No. 01-443, at 2 (D.N.M. Sept. 18, 2002) (doc. 74); *Smith v. City of Albuquerque*, No. 01-0416, at 2 (D.N.M. Oct. 8, 2002) (doc. 178); *Castillo v. City of Albuquerque*, No. 01-626, at 3-4 (D.N.M. Apr. 26, 2002) (doc. 78).

In all likelihood in the instant case, a finding of no liability on the part of the Defendant Officers would moot a trial against Defendants City and Schultz. According to Plaintiff, Defendants City and Schultz's liability is premised on Defendant Officers' misconduct: Plaintiff contends that the policies of Defendants City and Schultz "were a moving force behind the violations stated in Counts I, III, and VI of the complaint." *Doc. 1* ¶ 73. Thus, if Defendant Officers are found not to have committed the violations

described in Counts I, III, and VI of the Complaint, Defendants City and Schultz cannot be held liable. As the Supreme Court explained in *City of Los Angeles v. Heller*,

> [N]either *Monell* [] nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm. If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point.

475 U.S. 796, 799 (1986).

While the Tenth, and several of its sister Circuits, have found that a municipality, in certain circumstances, may be liable under § 1983 even in the absence of individual liability, in each of those cases the injuries at issue were not solely attributable to the actions of the individual defendants. *See Garcia v. Salt Lake City*, 768 F.2d 303, 310 (10th Cir. 1985) (finding that even if no individual defendant was liable for plaintiff's death, the County could be liable if the actions of all the individual prison employees pursuant to County policy, taken together, caused the death); *Thomas v. Cook County Sheriff's Department*, 604 F.3d 293, 305 (7th Cir. 2010) (finding that even if individual officers were not found liable for the death of an inmate, the County could be liable if its policies prevented the officers from responding adequately to his medical needs); *Speer v. City of Wynne*, 276 F.3d 980, 986 (8th Cir. 2002) (finding that even if individual supervisor not found liable for wrongful termination, the County could still be liable if a policy-making official caused plaintiff to be discharged without a hearing); *Barrett v.*

*Orange County Human Rights Comm'n*, 194 F.3d 341, 350 (2d Cir. 1999) (finding county commission could be found to have terminated plaintiff in violation of the First Amendment even if individual commissioners were not found liable); *Anderson v. City of Atlanta*, 778 F.2d 678, 686 (11th Cir. 1985) (finding city potentially liable absent individual liability if chronic understaffing caused plaintiff's death).

As explained above, Plaintiff's claims in the instant case allege only injuries caused by the affirmative actions of specific individuals; absent the alleged actions of these individuals, there can be no violation.  To put it another way, Plaintiff does not claim that the policies of Defendants City and Schultz caused a violation of Plaintiff's rights separate and apart from the violations caused by Defendant Officers.  Since a finding of no liability on the part of Defendant Officers would obviate the need for a trial of Defendants City and Schultz, bifurcation here could result in only a single, limited trial, and  is thus in the interest of convenience, expediency, and judicial economy.

**IV.      CONCLUSION**

Bifurcation of the claims against the individual Defendant Officers and those against Defendants City and Schultz is appropriate here.  Trying the claims together would likely prejudice Defendants, whereas trying them separately will not prejudice Plaintiff.  The possibility of avoiding a trial of the municipal and supervisory liability claims altogether also weighs in favor of bifurcation.

Therefore, City Defendants' Motion for Separate Trials, *doc. 73*, is **GRANTED**. The claims in Counts I, II, III, V, and VI of the Complaint against the individual Defendant Officers shall be tried first.  If necessary, the municipal and supervisory liability claims in Count VII will then be tried before the same jury.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by consent**