IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

STEPHAN CORDOVA,

    Plaintiff,

v.                                                     Civ. No. 11-806 GBW/ACT

CITY OF ALBUQUERQUE,
RAY SCHULTZ, CARLOS ARGUETA,
AARON HEYMAN, MATTHEW
HOISINGTON, KEVIN KEES,
JAMES FOX, and KENNETH NEIBERGER,

    Defendants.

## ORDER DENYING PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT ON COUNT V

This matter comes before the Court on Plaintiff's two motions for summary judgment on Count V of his Complaint alleging denial of his post-arrest procedural rights and violation of a state court custody order. *Docs. 77 & 78*. Having reviewed the briefing for both, *docs. 81, 82, 89, 91*, the Court will deny the motion.

I.     **BACKGROUND**

This case concerns the shooting of Plaintiff on Mesa Arriba Avenue, NE in Albuquerque, New Mexico on July 30, 2008, by officers of the Albuquerque Police Department (APD). The events leading up to the shooting are discussed in the Court's February 22, 2008, order on Defendants' Motion for Partial Summary Judgment on Count I of the Complaint, and the Court will not repeat them here. *See doc. 107*.

1

After the shooting, Plaintiff was transported to the University of New Mexico Hospital (UNMH), where he underwent emergency surgery. *Doc. 1* ¶ 22; *Doc. 83* at 4. He was then moved to UNMH's intensive care unit. *Doc. 1* ¶ 22; *Doc. 83* at 4. Police guards were posted outside of Plaintiff's hospital room. *Doc. 1* ¶ 27; *Doc. 81*, Ex. A ¶ 18.

On July 31, 2008, Defendant Detective Aaron Heyman secured an arrest warrant for Plaintiff, charging him with Aggravated Assault on a Police Officer. *Doc. 77*, Ex. 1; *Doc. 81*, Ex. A ¶¶ 14-18. On August 19, 2008, while still in the hospital, Plaintiff appeared through counsel before a judge in the Metropolitan Court. *Doc. 77*, Ex. 2. The court set a secured bond of $50,000. *Id*.

Plaintiff remained hospitalized until August 20, 2008 when he was transported to the Metropolitan Detention Center (MDC). *Doc. 1* ¶ 39. Plaintiff's family bonded Plaintiff out of MDC on August 22, 2008. *Id*. ¶ 41. During his time at MDC, Plaintiff allegedly did not receive adequate medical care and had to return to the hospital immediately upon release. *Id*. ¶¶ 42-43.

Plaintiff initially filed suit against Defendants in state court. *See doc. 1*. Defendants removed the case to this Court on September 8, 2011. *Id*. Plaintiff brought seven counts under 42 U.S.C. § 1983, three of which have since been dismissed. *See docs. 66, 107, 112*. The remaining four counts are (1) use of excessive force under the Fourth Amendment (Count II); (2) violation of Plaintiff's right to bail and due process under the Fourteenth Amendment (Count V); (3) wrongful prosecution (Count VI); and (4)

municipal and supervisory liability for the wrongful prosecution (Count VII). *Doc. 1, ex. A* ¶¶ 43-73.

The instant motions seek summary judgment only as to Count V of the complaint. *Docs. 77 & 78*. Count V includes two separate claims. First, Plaintiff alleges that Defendant Heyman violated his Fourteenth Amendment Due Process rights by causing a 19-day delay between his arrest and initial appearance. *Doc. 77* at 1. Second, he alleges that Defendant Heyman violated his Due Process rights when he transferred Plaintiff from UNMH to MDC in violation of the Metropolitan Court's order. *Doc. 78* at 1. In response, Defendant Heyman asserts *inter alia* that he is entitled to qualified immunity because the allegedly violated rights are not clearly established. *Docs. 81 & 82*.

The briefing posture of the instant case is unusual given that Plaintiff has moved for summary judgment and Defendants have responded by arguing that Plaintiff has not established that he can prevail over the defense of qualified immunity. *See docs. 81 & 82*. So, while Defendants invoke the qualified immunity defense, they have not moved for dismissal on that basis. *Id*. Instead, they simply ask the Court to deny Plaintiff's motion. *Doc. 81* at 13; *Doc. 82* at 2, 11. At the hearing on this matter, the Court discussed this wrinkle with the parties. *Doc. 110*. Based on those discussions, the Court will herein consider only whether, as a matter of law, Plaintiff prevails on Count V given the putative qualified immunity defense, but will not grant dismissal on that

3

basis until the parties have the opportunity to fully articulate their arguments on the defense presumably initiated via a defense motion for summary judgment on that basis.

The Court also notes that, in Plaintiff's motion for summary judgment based on his delayed initial appearance, Plaintiff requests summary judgment against Defendants City of Albuquerque and Aaron Heyman. *Doc. 77* at 1. However, a review of Plaintiff's Complaint reveals that this claim was not brought against Defendant City of Albuquerque. *See doc. 1* ¶¶ 58-63, 69-73. Summary judgment is available only as to claims which have been made and are pending. *See* Fed. R. Civ. P. 56(a). Given that the claims in Count V have not been brought against Defendant City, summary judgment cannot be granted against it.[1] As such, the Court will consider the motion for summary judgment only as against Defendant Heyman.

## II.  UNDISPUTED FACTS[2]

1. The undisputed facts listed in the Court's February 22, 2013, order on Defendants' Motion for Partial Summary Judgment on Count I of the Complaint, *doc. 107*, and May 21, 2013, order on Plaintiff's Motion for Partial Summary Judgment No. III on Count III of Plaintiff's Complaint, *doc. 112*, are hereby incorporated.

---

[1] Plaintiff appears to concede this point given that it was raised in Defendants' Response but not addressed in Plaintiff's Reply. *See doc. 81* at 6-7; *see generally doc. 89*.
[2] All material facts not specifically controverted by the opposing party are deemed undisputed. *See* D.N.M.L.R.-Civ. 56.1(b); Fed. R. Civ. P. 56(e)(2).

2. On the evening of July 30, 2008, Plaintiff was transported to the University of New Mexico Hospital (UNMH) for emergency surgery. *Doc. 1* ¶ 22; *Doc. 83* at 4 & Ex. A ¶ 5.

3. Plaintiff was in police custody from the time that he was transported to the hospital. *Doc. 77* ¶ 10 & Ex. 1 at 35:8-25; *Doc. 81* at 2.

4. On July 31, 2008, Defendant Heyman filed an affidavit in support of an arrest warrant for Plaintiff for aggravated assault on a police officer in the Metropolitan Court for Bernalillo County. *Doc. 59*, Ex. H; *Doc. 77* ¶ 7; *Doc. 81* at 2. That same day, the Metropolitan Court judge issued an arrest warrant for Plaintiff and docketed the action as *State v. Cordova*, CR15649-08. *Doc. 59*, Ex. I; *Doc. 77* ¶ 8; *Doc. 81* at 2. The warrant instructs the executing officer to "bring the defendant without unnecessary delay" before the court. *Doc. 59*, Ex. I; *Doc. 77* ¶ 9; *Doc. 81* at 2.

5. On the evening of July 31, 2008, Defendant Heyman filed the warrant and transmitted it to the officers guarding Plaintiff at UNMH. *Doc. 77*, Ex. 1; *Doc. 81*, Ex. A ¶ 18. The return of the arrest warrant was filed with the court on August 23, 2008. *Doc. 77* ¶ 11 & Ex. 1; *Doc. 81* at 2.

6. On the morning of August, 4, 2008, after being advised that Plaintiff was stable and able to speak, Defendant Heyman entered Plaintiff's hospital room to see if Plaintiff would provide a statement about the shooting. *Doc. 59*, Ex. B; *Doc. 77* ¶

12; *Doc. 81* at 2-3. Defendant Heyman told Plaintiff that he was investigating charges of aggravated assault on a police officer. *Doc. 59*, Ex. B at 3:13-14; *Doc. 77* ¶ 13; *Doc. 81* at 2.

7. When Plaintiff asked to speak with a lawyer, Defendant Heyman concluded the interview. *Doc. 59*, Ex. B at 4:19-26; *Doc. 77* ¶ 14; *Doc. 81* at 2.

8. On August 6, 2008, Plaintiff filed a Motion to Dismiss Criminal Complaint and Quash Arrest Warrant Based on Lack of Probable Cause or in the Alternative Motion to Waive First Appearance and for Release on His Own Recognizance. *Doc. 81*, Ex. C.

9. On August 18, 2008, Defendant Heyman was notified by UNMH staff that Plaintiff was going to be discharged from Sub-Acute Care. *Doc. 81*, Ex. A ¶ 39.

10. On August 19, 2008, Plaintiff made his first appearance through counsel in the Metropolitan Court. *Doc. 77* ¶ 16 & Ex. 2; *Doc. 81* at 2.

11. The court set a secured bond of $50,000 and noted that Plaintiff was "to remain in custody at UNMH until further notice." *Doc. 77* ¶ 17 & Ex. 2; *Doc. 81* at 2-3.

12. Plaintiff's counsel posted the court's order in Plaintiff's hospital room, showed it to the APD officers guarding Plaintiff, and called Defendant Heyman to confirm his receipt of the order. *Doc. 77* ¶ 18 & Ex. 4 at 58:6-9; *Doc. 81* at 2.

13. On August 20, 2008, at approximately 10:12 a.m. Defendant Heyman spoke with Assistant District Attorney Brian McKay, who advised him that if UNMH

discharged Plaintiff, Plaintiff should be transferred to the Metropolitan Detention Center (MDC). *Doc. 81*, Ex. A ¶ 47; *Doc. 82* at 4 ¶ 5.

14. At approximately 10:55 a.m. on August 20, 2008, Defendant Heyman informed Plaintiff's attorney Joe Kennedy that if UNMH discharged Plaintiff, he would be moved to MDC. *Doc. 81*, Ex. A ¶ 48; *Doc. 82* at 4 ¶ 6.

15. On the afternoon of August 20, 2008, Plaintiff was removed from UNMH and transferred to MDC. *Doc. 77* ¶ 19 & Ex. 3 at 36:14-23; *Doc. 81* at 3 & Ex. A ¶¶ 49-50; *Doc. 82* at 4 ¶ 8.

16. Plaintiff's family bonded him out of MDC on August 22, 2008, and immediately took him back to UNMH on the advice of Dr. William Shannon of MDC. *Doc. 77* ¶ 20 & Ex. 4 at 68:16-22; *Doc. 81* at 2 & Ex. B at 42:8-12.

## III. ANALYSIS

### A. Legal Framework

Both of the claims included in Count V allege Due Process violations. The "standard analysis under that provision proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 131 S. Ct. 859, 861 (2011). The source of the liberty interest can be the Due Process Clause itself or a state interest created by state law. *Hewitt v. Helms*, 459 U.S. 460, 466 (1983). With respect to Plaintiff's claim based on the delayed initial

7

appearance, Plaintiff could prevail by establishing either (1) that the state law created a liberty interest in an initial appearance in less than 20 days, or (2) that the Due Process Clause itself requires an initial appearance within 20 days.  With respect to Plaintiff's claim regarding the transfer to MDC, Plaintiff's position relies on the argument that the state court order created a liberty interest in remaining at the hospital until further order by the state court.

To prevail in his summary judgment motion over Defendant's invocation of the qualified immunity defense, Plaintiff must show that the respective right was clearly established.  "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'  We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."  *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (quoting *Anderson*, 107 S.Ct. at 3039 and citing *Malley v. Briggs*, 106 S.Ct. 1092 (1986)).  "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."  *Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010) (quotation omitted).  Moreover, because Plaintiff is the moving party, he has the burden of showing that he is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

### B. Delayed Initial Appearance

Plaintiff was hospitalized on July 30, 2008, and arrested on July 31, 2008, when Defendant Heyman served an arrest warrant charging Plaintiff with aggravated assault on a police officer. Undisputed Facts ¶¶ 2-4, *supra*. Plaintiff appeared in court via counsel 19 days later on August 19, 2008, while still hospitalized. *Id*. ¶¶ 10, 15. Defendant Heyman returned the warrant on August 20, 2008. *Doc. 71*, Ex. 1.

#### 1. *State created liberty interest*

Plaintiff's primary argument is that New Mexico law has created a liberty interest in an initial appearance in less than 19 days and, because Defendant's failure to promptly return the arrest warrant caused the delay, Defendant violated Plaintiff's Due Process rights. Plaintiff points to three state statutes and/or rules in support of a state-created liberty interest. First, N.M. Stat. § 31-1-5(B) states that "[e]very accused shall be brought before a court having jurisdiction to release the accused without unnecessary delay." Relatedly, N.M. Stat. § 31-1-4(C) states that "[w]hen a warrant is issued in a criminal action, . . . the defendant named in the warrant shall, upon arrest, be brought by the officer before the court without unnecessary delay." Finally, Plaintiff points to Metropolitan Court Rule 7-202 which provides that a preliminary hearing must be held within ten days of the initial appearance if the defendant is in custody. *Doc. 77* at 5-6; *Doc. 89* at 4-5; N.M. R. Crim. P. for Metro. Cts. 7-202.

Whether "certain state statutes . . . create liberty interests entitled to due process protection . . . is based on the language of the statutes themselves." *Montero v. Meyer*, 13 F.3d 1444, 1448 (10th Cir. 1994). The touchstone question is whether the statute creates a "legitimate claim of entitlement." *Id*. (quoting *Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)). "In sum, the use of 'explicitly mandatory language,' in connection with the establishment of 'specified substantive predicates' to limit discretion, forces a conclusion that the State has created a liberty interest." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 463 (1989).

In the instant case, the key statute that starts the "clock" requires an initial appearance "without unnecessary delay." N.M. Stat. § 31-1-5(B). The flexible nature of this requirement would seem to defeat the argument that a liberty interest in an initial appearance within 19-days has been created. More importantly, Plaintiff has not cited to a single case where similar language has been found to create such an interest. *Cf. Oviatt ex rel. Waugh v. Pearce*, 954 F.2d 1470, 1475 (9th Cir. 1992) (holding that Oregon statutes requiring arraignment within 36 hours and trial within 60 days of being in custody created liberty interest protected by Due Process Clause which was violated by 114 day detention without court appearance). In fact, the flexibility of the New Mexico requirement is reflected in its criminal case law. *See State v. Jacquez*, 888 P.2d 1009, 1012 (N.M. Ct. App. 1994) (no dismissal of charges when defendant not arraigned within fifteen days as required by Rule 5-303 of New Mexico's Rules of Criminal Procedure for

10

District Courts); *State v. Budeau*, 518 P.2d 1225, 1226-27 (N.M. Ct. App. 1973) (same). The other two statutes cited by Plaintiff do not address the timing of an initial appearance.[3]

Under these circumstances, Plaintiff has not demonstrated as a matter of law that it is clearly established that New Mexico law has created a liberty interest in an initial appearance in less than 19 days. As such, he has not shown that he can prevail over Defendant's defense of qualified immunity under this theory.

### 2. *Due Process Clause Itself*

Regardless of whether a state statue creates a deadline for an initial appearance, the Due Process Clause itself can form the basis for such a right. *See Elliott v. Martinez*, 675 F.3d 1241, 1244 (10th Cir. 2012). Obviously, an individual cannot be detained indefinitely without being brought before a court. *See Baker v. McCollan*, 443 U.S. 137, 144 (1979). Indeed, the Tenth Circuit has "acknowledge[d that] there are instances in which an extended pre-arraignment delay may implicate a defendant's rights and require judicial review." *Robertson v. Price City Police Dep't*, 83 F. App'x 286, 287 (10th Cir. 2003).

The issue under this analysis is how long is too long under the Due Process Clause. Courts have found Due Process Clause violations in circumstances involving a 57-day delay between arrest and initial appearance, *Armstrong v. Squadrito*, 152 F.3d 564

---

[3] Although Plaintiff suggests that an initial appearance cannot occur until a warrant is returned, he cites no state law to support that proposition. *Doc. 77* at 7; *Doc. 89* at 3.

11

(7th Cir. 1998), and a 38-day delay, *Hayes v. Faulkner County*, 388 F.3d 669 (8th Cir. 2004). The shortest delay found to constitute a violation was 18 days. *Coleman v. Frantz*, 754 F.2d 719, 723-24 (7th Cir. 1985). In each of these cases, when reviewing the prolonged detention prior to initial appearance, the court considered whether the delay and attendant circumstances "shocked the conscience." *Armstrong*, 152 F.3d at 570; *Hayes*, 388 F.3d at 674-75; *Coleman*, 754 F.2d at 723. Under such a standard, Plaintiff has not demonstrated that it is clearly established that the delay in his case would shock the conscience.

First, the delay in the instant case is significantly less than every case except *Coleman*. Second, none of the cases finding a violation involved an individual detained in the hospital recovering from serious injuries. *See United States v. Murray*, 197 F.R.D. 421, 423-24 (S.D. Cal. 2000) (finding medical treatment does not constitute "unnecessary delay" before an initial appearance under the Federal Rule of Criminal Procedure 5). Third, Plaintiff has presented no evidence that he requested an initial appearance while he was hospitalized. In fact, on August 6, 2008, Plaintiff's counsel moved to dismiss the criminal complaint or, in the alternative, waive the first appearance, indicating to a reasonable officer that Plaintiff did not wish to have an initial appearance.[4] *See doc. 81*, Ex. C.

---

[4] At the May 9, 2013, hearing, Plaintiff's counsel said that this motion was intended to waive Plaintiff's right to physically appear at the initial appearance, not to waive the initial appearance altogether. *See doc. 110* at 3. However, on its face the motion appears to waive Plaintiff's right to an initial appearance of any

Based upon the case law presented by Plaintiff, he has failed to demonstrate that "every reasonable official would have understood that" delaying Plaintiff's initial appearance while he was in the hospital violated his Due Process rights. *Ashcroft*, 131 S. at 2083 (quotation omitted). As such, he has not shown that he can prevail over Defendant's defense of qualified immunity under this theory.

### C. Removal of Plaintiff from the hospital in violation of a court order

Plaintiff's second motion fails for the same reason as the first: he fails to demonstrate that the right allegedly violated is not clearly established as a matter of law. Plaintiff argues that the August 19, 2008, Metropolitan Court Order Setting Conditions of Confinement created a liberty interest for Plaintiff in remaining in the hospital. *Doc. 78* at 4. He alleges that Defendant Heyman deprived him of that interest in violation of his procedural due process rights by transferring him to the Metropolitan Detention Center on August 20, 2008, in violation of the court order. *Id*.

Although the Supreme Court has found that state statutes can create a liberty interest when they impose restrictions on the transfer of prisoners from one facility to another, *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983), it has not addressed whether state court orders can create such interests. Likewise, the Tenth Circuit has not discussed whether a state court order can create a liberty interest for a pretrial detainee or prisoner, let alone an interest in remaining in custody in a hospital rather than being

---

kind: "In the alternative, Defendant asks that the Court enter a plea of not guilty, waive defendant's arraignment and release defendant on his own recognizance." *Doc. 81*, Ex. C.

transferred to the medical section of a prison. In *Gonzales v. City of Castle Rock*, 366 F.3d 1093, 1103 (10th Cir. 2004), the Tenth Circuit found that a restraining order, in combination with Colorado statutes, could create a property interest protected by the Fourteenth Amendment. However, that decision was reversed by the Supreme Court, which held that the restraining order at issue did not create a constitutionally protected property interest. *Town of Castle Rock v. Gonzales*, 545 U.S. 748 (2005). The Tenth Circuit has not returned to the question since.

There is also no general weight of authority on the issue. The few courts that have considered this issue have found that a state court order can create a liberty interest if it is mandatory and sets specific limits on the state's ability to detain a person. *See McGann v. Cunningham*, 315 F. Supp. 2d 150, 155 (D.N.H. 2004) (finding state court order setting release date created a liberty interest in that release date); *Walters v. Grossheim*, 990 F.2d 381, 384 (8th Cir. 1993) (finding state court order directing prison officials to reinstate inmate to Level IV of the prison created a liberty interest). In contrast, the Second Circuit in *Kulak v. City of New York* held that a state court order addressing the institutionalization of a mental patient, which directed a hospital "to arrange for a suitable facility as a less restrictive alternative," did not create a liberty interest because it did not place limits on the state's "lawful authority to confine" the patient and did not mandate the patient's transfer. 88 F.3d 63, 73 (2d Cir. 1996).

Even assuming that it is clearly established that a state court order can, in certain circumstances, create a liberty interest, it is less than clear that this order was sufficient to do so. Unlike those discussed in the cases above, the order at issue here is not a written opinion. Rather it is the standard form used by the Metropolitan Court for Bernalillo County to set conditions of release at all initial appearances, and consists primarily of check boxes. *Doc. 77*, Ex. 2. Here, the judge checked the box for "secured bond" and wrote in the amount of $50,000. *Id*. He also checked the box for "not to possess firearms or dangerous weapons." *Id*. The portion of the order relevant to the instant motion is a handwritten note on the side of the page that is connected to the "secured bond of $50,000 C/S" with an arrow and states "Δ to remain in custody at UNMH—until further notice→." *Id*. (original wording). It is unclear to what, if anything, the last arrow is intended to refer.

This is not the sort of clear and specific mandate that other courts have found creates a liberty interest. The order includes no date on which Plaintiff may be transferred to MDC or another facility. It is not even clear from the document whether the phrase "until further notice" means that Plaintiff should remain at UNMH until the court provides further notice or that the court will be notified when Plaintiff is removed from UNMH. The order also does not place limits on Defendants' authority to lawfully confine Plaintiff; in fact, by setting a secured bond of $50,000 it does the opposite. At best, the order determines the place of Plaintiff's confinement—at UNMH—for an

15

unknown period of time. Faced with this order a reasonable officer would have known at most that transferring Plaintiff from UNMH to MDC violated this state court order; he would not have known that it violated Plaintiff's federal constitutional rights.

As currently briefed, Plaintiff has failed to demonstrate that his transfer from custody in the hospital to the medical section at MDC notwithstanding the court order violated a clearly established due process right. Thus, his motion for summary judgment on that claim must be denied.

**IV. CONCLUSION**

Plaintiff has failed to demonstrate that the rights allegedly violated as described in Count V were clearly established. Plaintiff has therefore failed to meet his burden on summary judgment of showing that Defendant Heyman is not entitled to qualified immunity. Wherefore, Plaintiff's two motions for summary judgment on Count V of his Complaint alleging denial of his Fourteenth Amendment due process rights, *docs. 77 & 78*, are DENIED.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by consent**