IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

STEPHAN CORDOVA,

      Plaintiff,

v.                                      No. 11-cv-806 GBW/ACT

CITY OF ALBUQUERQUE, RAY SCHULTZ,
CARLOS ARGUETA, AARON HEYMAN,
MATTHEW HOISINGTON, KEVIN KEES,
JAMES FOX, and KENNETH NEIBERGER,

      Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON COUNT VI

This matter comes before the Court on Defendants' Motion for Partial Summary Judgment No. IV on Count VI of Plaintiff's Complaint Alleging Prosecution Without Probable Cause (*doc. 75*).  Having reviewed the briefing (*docs. 87, 96, 119, 120*), the Court grants the motion.

## I.    BACKGROUND

This case concerns the shooting of Plaintiff on Mesa Arriba Avenue, NE in Albuquerque, New Mexico on July 30, 2008, by officers of the Albuquerque Police Department (APD).  The events leading up to the shooting are discussed in the Court's February 22, 2013, order on Defendants' Motion for Partial Summary Judgment on Count I of the Complaint. *See doc. 107*.  Likewise, Plaintiff's subsequent hospitalization and detention are discussed in the Court's May 21 and June 26, 2013, orders denying

1

Plaintiff's motions for summary judgment on Counts III and V, respectively. *Docs. 112,*

*113*.

The instant motion concerns Count VI, Plaintiff's malicious prosecution claim,

which alleges that Defendant police officers Neiberger, Fox, Hoisington, and Kees

falsely reported that Plaintiff pointed a gun at them immediately before the shooting.

*See doc. 1* ¶¶ 64-68.  These false reports allegedly caused Detective Heyman to file

criminal charges against Plaintiff and the State to thrice bring the charges before a grand

jury.  *Id.*  In addition to Defendants Neiberger, Fox, Hoisington, Kees and Heyman,

liability for malicious prosecution is also sought against Defendants City of

Albuquerque and Ray Schultz under theories of municipal and supervisory liability

respectively.  *Id*. ¶¶ 69-73.

The State's attempts to prosecute Plaintiff proceeded as follows.  On the day of

the shooting, July 30, 2008, Detective Aaron Heyman of the APD filed a criminal

complaint against Plaintiff, charging him with Aggravated Assault on a Police Officer.

*Doc. 75*, Ex. B.  A warrant was issued for his arrest the following day.  *Id*., Ex. C.  On

September 2, 2008, a grand jury indicted Plaintiff on three counts of Aggravated Assault

on a Peace Officer (Deadly Weapon).  *Id*., Ex. D.  The indictment was dismissed without

prejudice on March 9, 2009, because the State had failed to allow Plaintiff and other

witnesses possessing potentially exculpatory evidence an opportunity to testify before

the grand jury.  *Id*., Ex. F.  About three months later, on June 25, 2009, Plaintiff was

indicted by a second grand jury on the same three counts. *Id.*, Ex. G. The state court dismissed this second indictment without prejudice on October 28, 2011, because the State failed to instruct the grand jury on an essential element of the charged crime. *Id.*, Exs. H, I. Nearly seven months later, on May 14, 2012, a third grand jury indicted Plaintiff on the same three counts of aggravated assault on a peace office. *Id.*, Ex. J.

Plaintiff filed this lawsuit in state court on July 22, 2011, accusing Defendants of violating his constitutional rights during the shooting incident and his subsequent arrest and detention. *Doc. 1*, Ex. A. Defendants removed the case to this Court on September 8, 2011, *doc. 1*, and filed the instant motion for summary judgment on Plaintiff's malicious prosecution claim on October 26, 2012. *Doc. 75*. On February 1, 2013, this Court stayed the case pending resolution of the criminal charges arising out of the third indictment, since the claims in this case implicate the same events at issue in the state court case. *Doc. 103*. On June 25, 2013, the state court dismissed the third indictment with prejudice, finding that the State had violated Plaintiff's Sixth Amendment right to a speedy trial. *Doc. 119*, Ex. A. This Court then ordered the parties to file supplemental briefing on the impact of the state court's ruling on the instant motion. *Doc. 118*. Plaintiff filed his brief on July 26, 2013; Defendants filed theirs on August 9, 2013. *Docs. 119, 120*.

## II.  STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), this Court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  Once the movant meets this burden, Rule 56(c) requires the non-moving party to designate specific facts showing that there is a genuine issue for trial.  *See Celotex Corp.*, 477 U.S. at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

"An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way.  An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Thom v. Bristol Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (internal citation omitted).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ." Fed. R. Civ. P. 56(c)(1)(A).  All material facts set forth in the motion and response which are not specifically controverted are deemed undisputed. D.N.M.LR-Civ. 56.1(b).

When reviewing a motion for summary judgment, the court should keep in mind three principles.  First, the court's role is not to weigh the evidence, but to assess the

threshold issue whether a genuine issue exists as to material facts requiring a trial. *See Liberty Lobby*, 477 U.S. at 249. Second, the court must resolve all reasonable inferences and doubts in favor of the non-moving party, and construe all evidence in the light most favorable to the non-moving party. *See Hunt v. Cromartie*, 526 U.S. 541, 550–55 (1999). Third, the court cannot decide any issues of credibility. *See Liberty Lobby*, 477 U.S. at 255. "[T]o survive the . . . motion, [the nonmovant] need only present evidence from which a jury might return a verdict in his favor." *Id*. at 257.

### III.   UNDISPUTED FACTS

1.   The undisputed facts listed in the Court's February 22, 2013 order on Defendants' Motion for Partial Summary Judgment on Count I of the Complaint (*doc. 107*), May 21, 2013 order on Plaintiff's Motion for Partial Summary Judgment No. III on Count III of Plaintiff's Complaint (*doc. 112*), and June 26, 2013 order on Plaintiff's motions for summary judgment on Count V (*doc. 113*) are hereby incorporated.

2.   There is no evidence which shows that Defendant Heyman personally participated in the alleged illegal seizure and use of excessive force against Plaintiff. *Doc. 75 ¶ 2; Doc. 87 ¶ 2*.

3.   When Defendant Heyman arrived at the scene of the shooting, Plaintiff was already in police custody. *Doc. 75 ¶ 3; Doc. 87 ¶ 3*.

4.	Defendant Heyman was assigned to be the "Primary On-Call Homicide/Violent Crimes Detective."  *Doc. 75 ¶ 4; Doc. 87 ¶ 4.*  As such, Defendant Heyman conducted and managed the investigation of the incident, completed a supplemental police report, drafted the criminal complaint, and assembled the APD's case against Plaintiff.  *Doc. 75 ¶ 4; Doc. 87 ¶ 4.*

5.	Defendant Heyman determined which criminal charge(s) he would file against Plaintiff.  *Doc. 75 ¶ 6; Doc. 87 ¶ 6.*

6.	On July 31, 2008, Defendant Heyman filed a criminal complaint against Plaintiff, charging him with aggravated assault on a police officer.  *Doc. 75 ¶ 7 & Exs. B, C; Doc. 87 ¶ 7.*  That same day, Metropolitan Court Judge Carl Butkuss issued an arrest warrant for Plaintiff.  *Doc. 75 ¶ 8 & Exs. B, C; Doc. 87 ¶ 8.*

7.	On September 2, 2008, Deputy District Attorney David Waymire presented the criminal case against Plaintiff to the first grand jury.  *Doc. 75 ¶ 11; Doc. 87 ¶ 11.*  During the proceeding, DDA Waymire presented the testimony of Defendant Heyman.  *Doc. 75 ¶ 16 & Ex. D; Doc. 87 ¶ 16.*

8.	On September 2, 2008, the grand jury indicted Plaintiff, charging him with three counts of aggravated assault upon a peace officer (deadly weapon) (firearm enhancement).  *Doc. 75 ¶ 17 & Ex. D; Doc. 87 ¶ 17.*

9.    On November 18, 2008, Plaintiff filed a Motion to Dismiss Indictment, which

argued that the District Attorney's office failed to present exculpatory evidence

to the grand jury.  *Doc. 75* ¶ 21 & Ex. E; *Doc. 87* ¶ 21.

10.   On March 9, 2009, the state court dismissed the grand jury indictment against

Plaintiff without prejudice.  *Doc. 75* ¶ 22 & Ex. F; *Doc. 87* ¶ 22.  The court found

that the State failed to allow Plaintiff to testify in his own defense and to screen

witness testimony, and allowed testimony suggesting there were no

eyewitnesses of the entire incident other than police officers even though the

police had not interviewed all witnesses.  *Doc. 75* ¶ 22 & Ex. F; *Doc. 87* ¶ 22.  The

court also found that the State failed to present potentially exculpatory evidence

to the grand jury.  *Doc. 75* ¶ 22 & Ex. F; *Doc. 87* ¶ 22.

11.   On June 25, 2009, DDA Waymire presented the criminal case against Plaintiff to a

second grand jury.  *Doc. 75* ¶ 23 & Ex. G; *Doc. 87* ¶ 23.  During the proceeding,

DDA Waymire presented the testimony of Defendants Heyman, Fox,

Hoisington, and Kees, as well as Detective Nick Laskar, Lieutenant Chris

Venghaus of the Albuquerque Fire Department, Sheila Bednarski, Sonia

Bednarski, Kristin Cordova, Kristin Thome, Vincent Thome, Melinda Perea, and

Dr. Charles Honts.  *Doc. 75* ¶ 28 & Ex. G; *Doc. 87* ¶ 28.  Plaintiff also testified.

*Doc. 75* ¶ 28; *Doc. 87* ¶ 28.

12. On June 25, 2009, the grand jury indicted Plaintiff, charging him with three counts of aggravated assault upon a peace officer (deadly weapon) (firearm enhancement). *Doc. 75* ¶ 29 & Ex. G; *Doc. 87* ¶ 29.

13. On July 11, 2011, Plaintiff filed a Motion to Dismiss Pursuant to *State v. Ulibarri*, 994 P.2d 1164 (N.M. Ct. App. 1999), which argued that the District Attorney's office failed to instruct the grand jury as to all of the essential elements of aggravated assault on a peace officer. *Doc. 75* ¶ 33 & Ex. H; Doc. 87 ¶ 33.

14. On October 28, 2011, the state court dismissed the second grand jury indictment against Plaintiff without prejudice. *Doc. 75* ¶ 34 & Ex. I; Doc. 87 ¶ 34.

15. On May 14, 2012, Assistant District Attorney D'Ann Rasmussen presented the case against Plaintiff to a third grand jury. *Doc. 75* ¶ 35; *Doc. 87* ¶35. During the proceeding, ADA Rasmussen presented the testimony of Defendant Heyman. *Doc. 75* ¶ 40 & Ex. J; *Doc. 87* ¶ 40.

16. On May 14, 2012, the third grand jury indicted Plaintiff, charging him with three counts of aggravated assault upon a peace officer (deadly weapon) (firearm enhancement). *Doc. 75* ¶ 41 & Ex. J; *Doc. 87* ¶ 41.

17. On December 19, 2012, Plaintiff filed a Motion to Dismiss on speedy trial grounds. *Doc. 119*, Ex. A at 1. On June 25, 2013, the state court found that the State violated Plaintiff's right to a speedy and public trial and dismissed the third indictment with prejudice. *Id.*, Ex. A.

# IV. ANALYSIS

In Count VI, Plaintiff alleges that Defendant Officers Kenneth Neiberger, James Fox, Matthew Hoisington, and Kevin Kees, and Detective Aaron Heyman prosecuted him without probable cause. *Doc. 1*, Ex. A ¶¶ 64-68. In particular, he claims that Defendants Neiberger, Fox, Hoisington, and Kees, (presumably in an effort to justify shooting Plaintiff), lied in their reports and to the second grand jury when they claimed that Plaintiff pointed a gun toward them immediately prior to the shooting. *Id.* ¶ 65; *Doc. 87* at 16. He also alleges that Detective Heyman charged him with aggravated assault on a peace officer based on the other officers' false reports, and that he lied to the grand jury when he testified that only police officers witnessed the shooting. *Doc. 1* ¶¶ 67-68; *Doc. 87* at 16.

In response, Defendants contend that Plaintiff's malicious prosecution claim fails as a matter of law because (1) the filing of false reports does not constitute an initiation of a prosecution; (2) Defendants are entitled to absolute immunity for their grand jury testimony; (3) there is no evidence that Defendants acted with malice; and (4) none of the criminal actions brought against Plaintiff have terminated in his favor.[1] *Doc. 75* at 14-24.

---

[1] Defendants state in a footnote that they do not waive their qualified immunity defense by addressing the merits of Plaintiff's malicious prosecution claim. *Doc. 75* at 14 n.4. By addressing the merits, Defendants essentially argue that Plaintiff has not made out a valid constitutional violation as required by the first prong of the qualified immunity analysis. *See Lundstrom v. Romero*, 616 F.3d 1108, 1118 (10th Cir. 2010) ("When a defendant asserts qualified immunity at the summary judgment stage, the burden shifts to the plaintiff who must clear two hurdles to defeat the defendant's motion. The plaintiff must

## A.  The law of malicious prosecution

A § 1983 malicious prosecution claim attacks the legal process that caused a plaintiff's unconstitutional detention and prosecution and may be premised on either a Fourth or Fourteenth Amendment violation.[2] *See Wilkins v. DeReyes*, 528 F.3d 790, 798 (10th Cir. 2008); *Becker v. Kroll*, 494 F.3d 904, 914 (10th Cir. 2007).  To make out such a claim, a plaintiff must demonstrate five elements: "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages."  *Wilkins*, 528 F.3d at 799.  In this case, Defendants primarily challenge the first and second elements.

demonstrate, on the facts alleged, that (1) the defendant violated a constitutional right, and (2) the right was clearly established at the time of the alleged unlawful activity." ).  Although Defendants go on to assert in the same footnote that "the contours of a Fourth Amendment malicious prosecution claim are not clearly established," they make no further arguments under the second prong of the qualified immunity analysis.  *Id.*  Because Defendants have failed to argue that the law at issue here is not clearly established, the Court treats their motion as attacking Plaintiff's claim under only the first prong of the qualified immunity analysis.

[2] "[I]f arrested pursuant to a warrant, plaintiff can challenge the probable cause determination supporting the warrant's issuance" under the Fourth Amendment.  *Wilkins v. DeReyes*, 528 F.3d 790, 798 (10th Cir. 2008).  But "at some point after arrest, and certainly before the time of trial, [malicious prosecution] analysis shifts to the Due Process Clause" of the Fourteenth Amendment.  *Pierce v. Gilchrist*, 359 F.3d 1279, 1286 (10th Cir. 2004); *see also Mondragon v. Thompson*, 519 F.3d 1078, 1082-83 (10th Cir. 2008); *but see Becker v. Kroll*, 494 F.3d 904, 919 (10th Cir. 2007) (suggesting that malicious prosecution claims based solely on pretrial events must be brought under the Fourth Amendment).  Since neither party has argued that the difference is relevant, it is not necessary here to determine where Fourth Amendment analysis ends and Fourteenth Amendment analysis begins.  *See Pierce*, 359 F.3d at 1286.

## B. Favorable termination

Defendants argue that the speedy trial dismissal in Plaintiff's criminal case is insufficient to satisfy the "favorable termination" element. Undoubtedly, it is Plaintiff's burden to prove favorable termination. *Wilkins*, 528 F.3d at 803. Whether the criminal proceedings were terminated in favor of Plaintiff is a determination for the Court.[3] *Restatement (Second) of Torts* §673 (1979).[4]

The Tenth Circuit has not yet decided whether a dismissal of criminal charges on speedy trial violation grounds can constitute a favorable termination. Indeed, the question has split federal courts. *See, e.g., Murphy v. Lynn*, 118 F.3d 938 (2d Cir. 1997) (speedy trial dismissal does constitute favorable termination for purposes of New York state-law tort of malicious prosecution); *Schlueter v. S. Energy Homes, Inc.*, 252 F. App'x 7, 11 (6th Cir. 2007) (finding speedy trial dismissal of re-trial of defendant after conviction in first trial not favorable termination under Tennessee law when original jury verdict of guilty was supported by evidence); *Brayshaw v. Garrett*, 2011 WL 971147, at *9 (N.D. Fla. Jan. 16, 2011) ("Dismissal on speedy trial grounds does not indicate that

---

[3] The exception to this rule is where there is a question as to the nature of the circumstances leading to the termination. In such a case, the "jury has only the function of finding the circumstances under which the defendant acted. The court determines whether under those circumstances, the termination was sufficiently favorable to the accused." *Restatement of Torts* § 673 cmt. d (1979); see also *Murphy v. Lynn*, 118 F.3d 938, 950 (2d Cir. 1997). In this case, there are no disputed material facts regarding the speedy trial dismissal. *See doc. 114*, Ex. 1; *doc. 120*, Ex. 1 at 1. As there are no factual disputes for the jury to resolve, this exception is inapplicable.

[4] The Court notes that, in the Tenth Circuit's most recent and significant opinion regarding the favorable termination element of a malicious prosecution claim, the Circuit Court relied heavily on the Restatement, citing to it no less than seven times in a two-page discussion. *Wilkins*, 528 F.3d at 802-04.

Plaintiff was innocent, and, therefore, is not a circumstance that constitutes favorable termination."). In the context of *nolle proseques*, the Tenth Circuit has explained that terminations that "do not 'indicate the innocence of the accused' or are at least 'consistent with guilt'" do not constitute favorable terminations. *Wilkins*, 528 F.3d at 803. Under *Wilkins*, when it is ambiguous whether a termination is "favorable" for the purposes of a malicious prosecution, a trial court must "look to the stated reasons for the dismissal as well as the circumstances surrounding it in an attempt to determine whether the dismissal indicates the accused's innocence." *Id*.

The reasons for and circumstances surrounding the dismissal in this case can be found in the state court's most recent order and a review of the prior proceedings. *Doc. 75*, Exs. B, D, E, F, G, H, I, J; *Doc. 119*, Ex. A. Plaintiff was first indicted on September 2, 2008, approximately a month after the incident. On November 18, 2008, Plaintiff moved to dismiss the indictment on the ground that the State failed to give him an opportunity to present exculpatory evidence, including his own testimony, to the grand jury. The state court granted the motion and dismissed the indictment four months later on March 9, 2009. The State again presented the case to the grand jury and Plaintiff was permitted to present his exculpatory evidence to the grand jury. On June 25, 2009, the grand jury indicted Plaintiff a second time. Two years later, on July 11, 2011, Plaintiff filed a motion to dismiss the indictment because the instructions given to the grand jury omitted a necessary element. The state court granted the motion and dismissed the

indictment more than three months later on October 28, 2011.  The State again presented

the case to the grand jury and Plaintiff was indicted a third time on May 14, 2012.

Seven months later, Plaintiff filed a motion to dismiss on speedy trial grounds.  Eight

months after its filing, the state court granted the motion and dismissed the indictment

with prejudice.

In granting the motion, the state court considered the factors set out in *Barker v.*

*Wingo*, 407 U.S. 514 (1972) and *State v. Spearman*, 283 P.3d 272 (N.M. 2012).  The state

court also noted the presumption of prejudice dictated by *State v. Garza*, 146 N.M. 499

(2009).  As for actual prejudice, the state court found the evidence "somewhat nominal"

consisting of the personal and financial impact on Plaintiff of the long-pending criminal

charges.  *Doc. 119*, Ex. A at 5 (listing "anxiety, depression regarding the pending

indictments, loss of the relationship with his fiancée, limitations of travel and possible

employment opportunities locally and in other parts of the State").  Importantly, the

state court did not find that the delay had prejudiced Plaintiff's ability to defend himself

against the charges due to loss of evidence.

Given these facts, this Court cannot find that the speedy trial dismissal indicates

Plaintiff's innocence of the criminal charges that were dismissed.  The grand jury

indicted Plaintiff three times for the crime.  Each time an indictment was dismissed, the

State fixed its prior error and sought to bring the case to trial.  While the first two

dismissals were based on errors which could bear on Plaintiff's guilt or innocence of the

crime, when those errors were cured, the grand jury again indicted Plaintiff. The final

order, which dismissed the case with prejudice, was based completely on the delay in

bringing Plaintiff to trial. Nothing in the Court's order suggests that it was based upon

the underlying facts of the incident or even that the delay had imperiled Plaintiff's

ability to present a complete defense.

When courts have found speedy trial dismissals to be "favorable terminations"

for the purpose of malicious prosecution claims, they have relied on two grounds. First,

they have reasoned that the State's failure to proceed to the merits supports an

inference that the unwillingness or inability to do so indicates a lack of reasonable

grounds for the prosecution. *Murphy*, 118 F.3d at 949-50. However, given the State's

repeated attempts to bring Plaintiff's criminal case to trial, such an inference is

inapplicable here. For example, the instant case is a far cry from the circumstances in

the *Murphy* case. In *Murphy*, once the criminal complaint was filed, it appears that the

prosecutor did not even indict defendant until state's statutory speedy trial clock had

run. *Id*. at 942-43. As the trial court explained in finding that the speedy trial dismissal

constituted a favorable termination, "[e]very lawyer in this room, including the Court,

knows what happened here, and it doesn't really show on the official record, but the

point is that there was no enthusiasm on the part of the District Attorney's Office to

prosecute this case, and that was known to everybody all along.... You know it and I

know they didn't prosecute it because they had no enthusiasm for the case. This was a

nice, easy way of kissing it off." *Id*. at 951. Nothing would support such a conclusion in the instant case.

The second grounds put forth to support recognizing a speedy trial dismissal as a favorable termination is more a matter of fairness. Not doing so puts a criminal defendant in the position of having to choose whether to vindicate his constitutional speedy trial rights at the cost of any potential malicious prosecution claim or waive those rights in order to maintain the future claim. *Id*. at 949. This rationale could apply here. Of course, much of the delay in Plaintiff's criminal case was the result of repeated errors made by the State. It seems unfair that, even if the State fully intended to bring a criminal case to trial but did not do so due to its repeated errors, it should be able to avoid a subsequent claim of malicious prosecution because the case was dismissed on speedy trial grounds. Nonetheless, this result is consistent with the reasoning in *Wilkins*.

In *Wilkins*, the prosecutor filed *nolle proseques* in the criminal case after the state trial court, upon motion of the accused, had suppressed the statements of third parties as unreliable hearsay. 528 F.3d at 803-04. The Tenth Circuit recognized that, when a criminal case is dismissed as a result of the accused's "suppression of evidence . . . that prevents a fair hearing of the cause," the resulting dismissal cannot serve as the basis for a malicious prosecution claim. *Id*. (quoting *Restatement (Second) of Torts* § 660 cmt. d (1979)). Consequently, the *Wilkins* court analyzed whether the accused's filing of the

suppression motion prevented him from satisfying the favorable termination element.

The Court concluded that it did not because the evidence was suppressed for its lack of reliability. As it explained, "[i]f the circumstances show that unreliable evidence has been suppressed and the prosecution then abandons the case because of lack of sufficient reliable evidence, that would be a circumstance where the dismissal is indicative of innocence." *Id*. at 804 (citations and quotations omitted). However, the Court went on to say that "if the evidence was only suppressed on 'technical' grounds having no or little relation to the evidence's trustworthiness, then the fact that there was not other sufficient evidence would not be indicative of innocence." *Id*. As an example of evidence suppressed on technical grounds, the Court pointed to a statement suppressed upon motion of the accused for a violation of *Miranda* warnings. *Id*. In short, the Tenth Circuit indicated that, if a criminal case is dismissed as a result of the suppression of the accused's statement due to a *Miranda* violation, that dismissal is not a "favorable termination" for the purposes of a malicious prosecution claim. Such a rule would certainly place a criminal defendant in the position of having to choose whether to vindicate his constitutional rights under *Miranda* at the cost of any potential malicious prosecution claim or waive those rights in order to maintain the future claim. Given its willingness to make a defendant choose between enforcing his *Miranda* rights and bringing a future malicious prosecution claim, it would seem that the Tenth Circuit

would be willing to make a defendant choose between enforcing his speedy trial rights and bringing such a claim.

For these reasons, this Court finds that the speedy trial dismissal in the instant case is not a favorable termination for the purposes of his malicious prosecution claim. As such, Defendants are entitled to summary judgment on that claim.[5]

### C. Causation of Plaintiff's prosecution

As an alternative basis for granting their summary judgment motion, Defendants argue that Officers Hoisington, Kees, Fox, Neiberger and Heyman cannot be said to have "caused" Plaintiff's prosecution because they did not initiate proceedings against Plaintiff or cause those proceedings to continue.[6] *Doc. 75* at 17-18. In *Pierce v. Gilchrist*, the Tenth Circuit held that if a person lies or misrepresents evidence to a third party, causing that third party to file charges, the person can be liable for malicious prosecution despite not filing the charges herself. 359 F.3d 1279, 1292-93 (10th Cir. 2004); *Calvert v. Ediger*, 415 F. App'x 80, (10th Cir. 2011) ("Most commonly, officers can be liable for malicious prosecution if they conceal or misrepresent material facts to the prosecutor, whose judgment was thereby influenced by the misstatements. Such a demonstration is sufficient to meet the causation requirements of § 1983.") (internal citations omitted). In *Pierce*, a police forensic analyst falsely identified hair samples

---

[5] Because Plaintiff cannot make out a malicious prosecution claim against the individual officers, then his claims for supervisory and municipal liability on this basis also fail. Thus, Defendants City of Albuquerque and Schultz are also entitled to summary judgment on this claim as brought in Count VII.
[6] In the instant motion, Defendants do not make a causation argument as to the municipal liability of Defendant City of Albuquerque or the supervisory liability of Defendant Schultz.

taken from the crime scene as belonging to Mr. Pierce. *Id.* at 1282-83. The court

compared her actions to that of a police officer who lies to a magistrate in order to

obtain a warrant and said that "[i]n each case the government official maliciously

abuses a position of trust to induce the criminal justice system to confine and then to

prosecute an innocent defendant. We view both types of conduct as equally repugnant

to the Constitution." *Id.* at 1293.

Plaintiff alleges that Officers Hoisington, Kees, Fox, and Neiberger each made

false reports that led to the arrest and charging of Plaintiff with aggravated assault on a

peace officer. *Doc. 1* ¶¶ 65-66. As for Officer Neiberger, Detective Heyman's criminal

complaint cites his statement that he "could see Mr. Cordova holding in his right hand a

black semi-automatic handgun by his right side." *Doc. 75*, Ex. B. The state court judge

relied on Detective Heyman's complaint in determining that there was probable cause

for an arrest warrant. Thus, if this statement is in fact false, as alleged by Plaintiff, there

is evidence that Officer Neiberger "caused" the arrest of Plaintiff by lying to Detective

Heyman, whom he knew was investigating the shooting. S*ee Norris v. City of Aurora*,

2005 WL 1768758, at *5-*6 (D. Colo. July 25, 2005) (finding there was material dispute as

to whether police officers caused prosecution when plaintiff put forth evidence that

they falsely told detective that plaintiff pointed a gun at an officer). This is precisely the

sort of conduct the Tenth Circuit found to provide a basis for a malicious prosecution

claim in *Pierce*. Because the veracity of the statement is disputed, summary judgment

on the basis of causation is precluded as to Officer Neiberger.[7]

In contrast to Officer Neiberger, Plaintiff has put forward no evidence of the

allegedly false reports made by Officers Hoisington, Kees, and Fox prior to the original

charges and the arrest. Detective Heyman's complaint refers only to Officer Neiberger

and there is no evidence beyond Plaintiff's conclusory allegations of what the other

officers told the detective prior to his obtaining the arrest warrant. *See doc. 75*, Ex. B. In

order to overcome a summary judgment motion, the non-movant must "go beyond the

pleadings and set forth specific facts . . . identified by reference to [evidence]." *See Adler*

*v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). Plaintiff has not met this

burden as to Officers Hoisington, Kees, and Fox. Consequently, the lack of causation

evidence is an alternative basis for summary judgment as to these Defendants.[8]

---

[7] Defendants also argue that Plaintiff has failed to prove the malice element of malicious prosecution. Doc. 75 at 21. Malice, however, is inferable from intentional misrepresentation of the truth. *Pierce*, 359 F.3d at 1296-97; *Norris*, 2005 WL 1768758, at *6 ("[T]he *Pierce* court suggested that malice could include 'knowingly and intentionally, or with reckless disregard for the truth, falsifying or omitting evidence.'"). Thus, because Plaintiff has put forward sufficient evidence to create a material dispute as to whether Officer Neiberger lied to Detective Heyman, he has also put forward sufficient evidence to create a material dispute regarding the malice element. Thus, summary judgment on the basis of malice is also precluded as to Officer Neiberger.

[8] Even if a person does not cause the initiation of proceedings, he can still be liable for malicious prosecution if he "causes" the continuation of those proceedings. *See Pierce*, 359 F.3d at 1293. Plaintiff also argues that Defendants Hoisington, Kees, Fox, and Neiberger caused his continued prosecution by falsely testifying before the grand jury that Plaintiff pointed a gun at the officers. *Doc. 87* at 16. "A grand jury witness has absolute immunity from any § 1983 claim based on the witness' testimony." *Rehberg v. Paulk*, 132 S. Ct. 1497, 1506 (2012). "[T]his rule may not be circumvented by claiming that a grand jury witness conspired to present false testimony or by using evidence of the witness' testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution." *Id*. Thus, the grand jury testimony of these Defendants cannot be used to satisfy the causation requirement for Plaintiff's malicious prosecution claim.

As for Detective Heyman, Plaintiff suggests that he "lied to the judge who issued the warrant when he withheld Andrade's [sic] full statement about the shooting and withheld or failed to interview multiple witnesses who saw nothing in Cordova's hands." *Doc. 87* at 16. Plaintiff argues that Detective Heyman deliberately omitted the fact that Mr. Andrada did not see a weapon in Plaintiff's hand immediately before the shooting. *Id.* at 9. This argument fails for two reasons. First, Plaintiff has presented no evidence of what Mr. Andrada told Detective Heyman during the July 30, 2008 interview at the scene of the shooting, other than the detective's own criminal complaint. This Court cannot presume that Mr. Andrada said something other than what Detective Heyman reported without supporting evidence. *See Adler*, 144 F.3d at 671; Fed. R. Civ. P. 56(c)(1). Second, to the extent we can assume that Mr. Andrada's later deposition testimony reflects what he likely told Detective Heyman, Heyman's complaint accurately reflects that testimony. At the deposition, Mr. Andrada said that Plaintiff's hand was in his pocket and that he was unsure whether Plaintiff had a gun. *Doc. 88*, Ex. 5. Likewise, Heyman's complaint states that Mr. Andrada reported that Plaintiff "kept jerking his hand around inside of his pocket"; it does not report that Mr. Andrada saw a gun. *Doc. 75*, Ex. B. The fact that Mr. Andrada affirmatively did not see a gun is readily inferred from the fact that he reported Plaintiff's hand being in his pocket the whole time. *Id.*

While Plaintiff also alleges that Detective Heyman failed to interview witnesses who saw nothing in Plaintiff's hands, Detective Heyman had no obligation to do so. An officer has no duty to conduct a complete investigation prior to seeking a warrant; he need only ensure that the information presented in his affidavit is true, accurate, and supports probable cause. *See Illinois v. Gates*, 462 U.S. 213, 235 (1983) (explaining that "many warrants are-quite properly . . . issued on the basis of nontechnical, common-sense judgments of laymen applying a standard less demanding than those used in more formal legal proceedings"). Plaintiff has presented no evidence that Detective Heyman knew of these other witnesses and deliberately omitted their testimony from the complaint. He has therefore failed to demonstrate that Heyman "caused" Plaintiff's arrest and prosecution by knowingly withholding information from the complaint. Consequently, the lack of causation evidence is an alternative basis for summary judgment as to Defendant Heyman.[9]

## V.    CONCLUSION

Taking the facts in the light most favorable to Plaintiff, he cannot establish that his criminal proceedings resulted in a favorable termination for the purposes of a malicious prosecution claim. This failure alone dictates that the motion for summary judgment be granted on that claim as to all Defendants. Moreover, as to Defendants

---

[9] Plaintiff also argues that Defendant Heyman caused his continued prosecution by falsely testifying before the grand jury that Plaintiff pointed a gun at the officers and that no one other than the officers witnessed the shooting. *Doc. 87* at 16. As explained above, such cannot be used to establish causation. *See supra* n.8.

Hoisington, Kees, Fox, and Heyman, summary judgment must be granted on that claim due to Plaintiff's failure to establish causation.

Wherefore, Defendants' Motion for Partial Summary Judgment No. IV on Count VI of Plaintiff's Complaint Alleging Prosecution Without Probable Cause (*doc. 75*) is GRANTED. Plaintiff's malicious prosecution claims against all Defendants are DISMISSED with prejudice.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent