IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

STEPHAN CORDOVA,

    Plaintiff,

v.                                                               No. 11-cv-806 GBW/ACT

CITY OF ALBUQUERQUE, CHIEF RAY SCHULTZ,
CARLOS ARGUETA, AARON HEYMAN,
MATTHEW HOISINGTON, KEVIN KEES, JAMES FOX,
AND KENNETH NEIBERGER,

    Defendants.

## ORDER GRANTING DEFENDANTS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT ON COUNT V

This matter is before the Court on Defendants' two motions for summary judgment as to Count V of Plaintiff's Complaint, on the basis of qualified immunity. *Docs. 121, 122*. Count V of Plaintiff's Complaint alleges denial of his post-arrest procedural rights as well as violation of a state court custody order. *Doc. 1*, Ex. A at 8. The Court, having reviewed the motion and accompanying briefing (*docs. 127, 130, 134 & 136*), and being fully advised, will GRANT Defendants' motions.

I.    **BACKGROUND**

This case concerns the shooting of Plaintiff by officers of the Albuquerque Police Department on July 30, 2008, on Mesa Arriba Avenue, NE, in Albuquerque, New Mexico. The facts underlying this matter have been set forth in detail in the Court's

1

prior orders (*see, e.g.*, *docs. 107 & 113*).  The Court will therefore only briefly summarize the events relevant to this motion here.

Immediately after the shooting on July 30, 2008, Plaintiff was brought to the University of New Mexico Hospital ("UNMH") for emergency surgery.  *Doc. 1*, Ex. A ¶ 22.  He was in police custody at that time, and officers were stationed outside of his hospital room.  *Doc. 81*, Ex. A ¶ 12, 18.  On July 31, 2008, Detective Heyman secured a warrant for Plaintiff's arrest, charging him with aggravated assault on a police officer. *Doc. 77*, Ex. 1.

On August 6, 2008, Plaintiff filed a Motion to Dismiss Criminal Complaint and to Quash Arrest Warrant Based on Lack of Probable Cause or in the Alternative Motion to Waive First Appearance and for Release on his Own Recognizance. *Doc. 81*, Ex. C.  On August 19, 2008, Plaintiff had his initial appearance in Metropolitan Court, during which the court set conditions of release. *Doc. 77*, Ex. 2.  At that point, Plaintiff was still hospitalized at UNMH, and appeared in court through his attorney.  *Doc. 121* at 3 ¶ 13; *Doc. 127* at 3.  The Court's Order Setting Conditions of Release set Plaintiff's bond at $50,000, and noted that he was in custody at UNMH.  *Doc. 77*, Ex. 2.

On August 20, 2008, Plaintiff was discharged from UNMH and transported to Metropolitan Detention Center ("MDC"), where he continued to receive medical treatment.  *Doc. 1*, Ex. A ¶ 35, 39; *Doc. 121* at 3-4 ¶ 14; *Doc. 127* at 4.

2

In Count V of his complaint, Plaintiff alleges that Detective Aaron Heyman deprived him of his due process rights by failing to bring him before a court for an initial appearance in a timely manner. *Doc 1*, Ex. A at 8. Plaintiff further alleges that Detective Heyman violated the court's custody order when he transferred Plaintiff from UNMH to MDC. *Id.*

On October 26, 2012, Plaintiff filed two motions for summary judgment on Count V. *Docs. 77 & 78*. In response, Defendants raised the defense of qualified immunity. *Docs. 81 & 82*. The Court denied Plaintiff's motions on June 26, 2013, but declined to consider whether Defendants were entitled to summary judgment on the basis of qualified immunity because Defendants had not yet moved for dismissal on that basis. *Doc. 113*.

On August 9, 2013, Defendants filed motions for summary judgment on Count V, seeking dismissal on the basis of qualified immunity. *Docs. 121 & 122*. Because Defendants' motions involve many of the same issues addressed in the Court's prior order, I will refer to that decision throughout this order.

II. <u>UNDISPUTED FACTS</u>

1. Plaintiff was shot and wounded on July 30, 2008, by Albuquerque Police Department Officers Fox, Kees, and Hoisington. *Doc. 1*, Ex. A at 2 ¶ 4; at 3 ¶¶ 17-18; and at 7 ¶ 49.
2. Directly following the shooting, Plaintiff was admitted for emergency surgery at the University of New Mexico Hospital ("UNMH"). *Doc. 1*, Ex. A ¶ 22.

3

3. Plaintiff was in police custody from the time he was transported to the hospital. *Doc. 121* at 2 ¶ 3; *Doc. 127* at 3.
4. On July 31, 2008, Judge Butkus at the Metropolitan Court for Bernalillo County approved and signed an arrest warrant for Plaintiff. *Doc. 81*, Ex. A at 3. The warrant was supported by an affidavit filed by Detective Heyman charging Plaintiff with aggravated assault on a peace officer. *Id.* Detective Heyman filed the arrest warrant that evening. *Id.*
5. Plaintiff was recovering in the hospital and unable to speak until August 4, 2008. *Doc. 121* at 3 ¶ 9; *Doc. 127* at 3.
6. On August 6, 2008, Plaintiff filed a Motion to Dismiss Criminal Complaint and to Quash Arrest Warrant Based on Lack of Probable Cause or in the Alternative Motion to Waive First Appearance and for Release on His Own Recognizance. *Doc. 81*, Ex. C.
7. On August 19, 2008, Plaintiff made his first appearance, through counsel, in Metropolitan Court. *Doc. 121* at 3 ¶ 13; *Doc. 127* at 3.
8. During this appearance, the court set conditions of release. The court's Order Setting Conditions of Release indicated that Plaintiff would be released from custody subject to a $50,000 secured bond. *Doc. 77*, Ex. 2. The court added a handwritten note to the order, stating "→ Δ to remain in custody at UNMH – until further notice →." *Id.*
9. On the morning of August 20, 2008, Assistant District Attorney Brian McKay advised Detective Heyman that, should UNMH discharge Plaintiff, Plaintiff should be transported to the Bernalillo County Metropolitan Detention Center ("MDC"). *Doc. 81*, Ex. A at 7.
10. Later that morning, Detective Heyman notified Plaintiff's attorney that he would be transferred to MDC upon being discharged from the hospital. *Id.*
11. Plaintiff was discharged from UNMH on August 20, 2008, and transferred to the medical facility at MDC. *Doc. 1*, Ex. A ¶ 35, 39

### III. ANALYSIS

#### A. Legal Framework

Under Federal Rule of Civil Procedure 56(a), a Court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the movant meets this burden, Rule 56(c) requires the non-moving party to designate specific facts showing that there is a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

"An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Thom v. Bristol Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (internal citation omitted). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ." Fed. R. Civ. P. 56(c)(1)(A). All material facts set forth in the motion and response which are not specifically controverted are deemed undisputed. D.N.M.LR-Civ. 56.1(b).

When reviewing a motion for summary judgment, the court should keep in mind three principles. First, the court's role is not to weigh the evidence, but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial. *See Liberty Lobby*, 477 U.S. at 249. Second, the court must resolve all reasonable inferences and doubts in favor of the non-moving party, and construe all evidence in the light most favorable to the non-moving party. *See Hunt v. Cromartie*, 526 U.S. 541, 550–55 (1999). Third, the court cannot decide any issues of credibility. *See Liberty Lobby*, 477 U.S. at 255. "[T]o survive the . . . motion, [the nonmovant] need only present evidence from which a jury might return a verdict in his favor." *Id*. at 257.

Qualified immunity protects public officials from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "When a defendant asserts qualified immunity at the summary judgment stage, the burden shifts to the plaintiff who must clear two hurdles to defeat the defendant's motion. The plaintiff must demonstrate, on the facts alleged, that (1) the defendant violated a constitutional right, and (2) the right was clearly established at the time of the alleged unlawful activity." *Lundstrom v. Romero*, 616 F.3d 1108, 1118 (10th Cir. 2010) (internal citations omitted). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every

6

'reasonable official would have understood that what he is doing violates that right.' We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (quoting *Anderson*, 107 S.Ct. at 3039 and citing *Malley v. Briggs*, 106 S.Ct. 1092 (1986)). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010) (quotation omitted). Both of Plaintiff's claims in Count V of his complaint allege violations of due process. In evaluating whether there has been a due process violation, the "standard analysis . . . proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *See Swarthout v. Cooke*, 131 S. Ct. 859, 861 (2011). The source of the liberty interest can be the Due Process Clause itself or a state interest created by state law. *Hewitt v. Helms*, 459 U.S. 460, 466 (1983); *Elliott v. Martinez*, 675 F.3d 1241, 1244 (10th Cir. 2012).

### B. Defendant Heyman is entitled to qualified immunity with respect to Plaintiff's claim based on the delay of his initial appearance.

Plaintiff claims that he was denied due process when Detective Heyman failed to bring him before the court for an initial appearance until August 19, 2008, 19 days after

his arrest. Detective Heyman argues he is entitled to summary judgment on the basis of qualified immunity because it was not clearly established at the time that either New Mexico state law or the Due Process Clause created a right to an initial appearance within this time frame.

> *1. New Mexico law does not create a liberty interest protected by the Due Process clause in an initial appearance within 19 days.*

Both parties agree that, pursuant to N.M. Stat. Ann. § 31-1-5(B) (1978), "[e]very accused shall be brought before a court having jurisdiction to release the accused *without unnecessary delay*." (emphasis added). Plaintiff argues that, *ipso facto*, it "is clearly established that an officer making an arrest has a duty to bring the arrested before the Court without unnecessary delay." *Doc. 127* at 13. Certainly, New Mexico law requires such an initial appearance. However, at this point in the analysis, the question is whether that state law requirement creates a liberty interest protected by the Due Process Clause. Whether "certain state statutes . . . create liberty interests entitled to due process protection . . . is based on the language of the statutes themselves." *Montero v. Meyer*, 13 F.3d 1444, 1448 (10th Cir. 1994). The touchstone question is whether the statute creates a "legitimate claim of entitlement." *Id*. (quoting *Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)). "In sum, the use of 'explicitly mandatory language,' in connection with the establishment of 'specified substantive predicates' to

8

limit discretion, forces a conclusion that the State has created a liberty interest." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 463 (1989).

As before, the Court concludes that the terminology "without unnecessary delay" of Section 31-1-5(B) is not the type of mandatory language that limits official discretion sufficiently to create a protected liberty interest. *Doc. 113* at 10. Plaintiff has failed to cite any authority to the contrary.

Plaintiff also points to Rule 7-202(D)[1] of the New Mexico Rules of Criminal Procedure for the Metropolitan Courts as a source of the protected liberty interest. This rule provides for a "preliminary examination . . . within a reasonable time but in any event no later than ten (10) days following the initial appearance if the defendant is in custody . . . ." Rule 7-202(D) NMRA. Because Plaintiff is challenging the delay in his initial appearance and not the time between his initial appearance and preliminary hearing, this rule cannot provide the basis for the liberty interest he claims was violated.

Plaintiff also relies on the state court requirement that the "arresting officer shall make a return of the warrant, . . . to the court which issued the warrant and notify immediately all law enforcement agencies, previously advised of the issuance of the warrant for arrest, that the defendant has been arrested." Rule 7-206 NMRA. Again, this rule cannot support a due process-protected liberty interest. First, although the return may ordinarily bring about the setting of the initial appearance, this rule makes

---

[1] In his Response, Plaintiff quotes language from Rule 7-202(D) but mistakenly cites to Rule 6-202(D).

9

no reference to its connection to the initial appearance.  Second, it is unclear whether the "immediately" requirement even applies to the return as opposed to the notification to law enforcement agencies.  Simply put, the language of this rule does not "force[] a conclusion that the State has created a liberty interest" in a speedy initial appearance.

Finally, Plaintiff cites *Wilson v. Montano* as support for the proposition that New Mexico law has created a liberty interest in a prompt initial appearance.  715 F.3d 847, 854 (10th Cir. 2013).[2]  When examined closely, however, *Wilson* provides no such support.  *Wilson* dealt with the right to a prompt **probable cause determination**.  Although Plaintiff conflates this right with the right to a prompt initial appearance, they are quite distinct.  Due Process requires that, as a prerequisite to extended restraint of liberty following arrest, an independent judicial officer review the allegations against an individual to see if those allegations establish probable cause to believe the individual committed a crime.  *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975).  Barring emergency or other extraordinary circumstance, this probable cause determination must be done no later than 48 hours after arrest.  *County of Riverside v. McLaughlin*, 500 U.S. 44, 56-57 (1991).  But this determination need not be done at a hearing in front of the judge.  In fact, it is sufficient that the judge signs the arrest warrant after reviewing the supporting affidavit.  *See Gerstein*, 420 U.S. at 116, n.18; *see e.g.*, *United States v. Van Metre*, 150 F.3d

---

[2] Plaintiff points to *Wilson* for other arguments which are more properly addressed when considering whether the Due Process Clause itself, rather than state law, can be the source of the liberty interest. *See infra* p. 13.

10

339, 348 (4th Cir. 1998); *Tibbs v. City of Chicago*, 469 F.3d 661, 665 (7th Cir. 2006); *Golberg v. Hennepin Cnty.*, 417 F.3d 808, 811 (8th Cir. 2005); *Jones v. City of Santa Monica*, 382 F.3d 1052, 1056 (9th Cir. 2004); *Waldrop v. Jones*, 77 F.3d 1308, 1317 (11th Cir. 1996). Plaintiff's claim cannot be that he did not receive a probable cause determination because, on July 31, 2008, a judge signed the arrest warrant based on the aggravated assault charge. His claim is based only on the delay of his initial appearance. *Wilson* says nothing about a right to an initial appearance within a certain time period under state law. Moreover, the *Wilson* court relied on federal constitutional law in finding the right to a probable cause determination within 48 hours. State law was invoked only to determine whether the law enforcement agents were responsible to ensure that such a determination occurred.

Based on the foregoing, Plaintiff has failed to establish that New Mexico law has created a liberty interest, protected by the federal constitution, in a prompt initial appearance. As such, Plaintiff has not met his burden of showing that Defendant Heyman violated his right to due process under this theory.

> **2.** ***It is not clearly established that the Due Process Clause entitles Plaintiff to an initial appearance in less than 20 days under the facts of this case.***

Even if state law has not created such a liberty interest, the Due Process Clause itself can form the basis for such a right. *See Elliott v. Martinez*, 675 F.3d 1241, 1244 (10th Cir. 2012). Obviously, an individual cannot be detained indefinitely without being

11

brought before a court. *See Baker v. McCollan*, 443 U.S. 137, 144 (1979). Indeed, the Tenth Circuit has "acknowledge[d that] there are instances in which an extended pre-arraignment delay may implicate a defendant's rights and require judicial review." *Robertson v. Price City Police Dep't*, 83 F. App'x 286, 287 (10th Cir. 2003).

Plaintiff argues that the delay in his case violates his rights under the Due Process Clause and that this delay was so significant that any reasonable official would have understood it was a violation. Defendants counter that there is no clearly established due process right for a hospitalized defendant to be brought before the court within this time period. "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.' We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (quoting *Anderson*, 107 S.Ct. at 3039 and citing *Malley v. Briggs*, 106 S.Ct. 1092 (1986)). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010) (quotation omitted). While there is no need for a scavenger hunt for prior cases with precisely the same facts, "the question of whether the right is clearly established must

be answered 'in light of the specific context of the case, not as a broad general proposition.'" *Morris v. Noe*, 672 F.3d 1185, 1196 (10th Cir. 2012). That is, the question is not whether the general right to a prompt initial appearance is clearly established, but whether Plaintiff had a clearly established right under the facts of this case.

As the Court explained in its prior order, there is little case law from any Circuit, and none in the Tenth Circuit, addressing at what point a delayed initial appearance violates an individual's Due Process rights. *Doc. 113* at 11-13. Courts have found Due Process Clause violations in circumstances involving a 57-day delay between arrest and initial appearance, *Armstrong v. Squadrito*, 152 F.3d 564 (7th Cir. 1998), and a 38-day delay, *Hayes v. Faulkner County*, 388 F.3d 669 (8th Cir. 2004). The shortest delay found to constitute a violation was 18 days, but there the arrestee was not in the hospital receiving medical treatment and, unlike Plaintiff, he repeatedly sought an appearance in court. *Coleman v. Frantz*, 754 F.2d 719, 723-24 (7th Cir. 1985). In each of these cases, when reviewing the prolonged detention prior to initial appearance, the court considered whether the delay and attendant circumstances "shocked the conscience." *Armstrong*, 152 F.3d at 570; *Hayes*, 388 F.3d at 674-75; *Coleman*, 754 F.2d at 723.

Plaintiff has pointed to no new cases which significantly bear on this question. In this section, Plaintiff again cites to *Wilson* claiming that it established a right to an initial appearance within 48 hours of arrest. *Doc. 127* at 19-20. However, as discussed above, *Wilson* establishes only that a judicial officer must make a probable cause

determination within 48 hours; not hold an initial appearance.  In this case, the probable cause determination was made when the judge signed the arrest warrant.  Plaintiff also points to *Corley v. United States*, 556 U.S. 303, 320 (2009).  *Corley*, though, stands only for the general proposition that an initial presentment is important and should be done without necessary delay.  It does not serve to clearly advise an officer faced with the circumstances of this case that he must ensure an initial appearance in short order notwithstanding that the defendant is receiving significant medical care in the hospital and that his attorney has moved to waive the initial appearance.

Arguably, it is clearly established that a delay in giving an initial appearance is a Due Process violation where the length of the delay and the attendant circumstances would shock the conscience.  Such would make it similar to the cases involving excessive force where the "more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation."  *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004).

In this case, the specific context of the case is defined by the following facts:  (1) Plaintiff was arrested without a warrant on July 31, 2008; (2) the same day, a judge found probable cause to support a charge of aggravated assault; (3) Plaintiff was in the hospital and unable to speak until August 4, 2008; (4) on August 6, 2008, Plaintiff's defense attorney filed a motion asking to waive an initial appearance in the case; (5) Plaintiff remained in the hospital receiving medical care until August 20, 2008; and (6)

on August 19, 2008, the day before his release from the hospital, Plaintiff, through counsel, had an initial appearance. Under these circumstances, the delay in the initial appearance does not shock the conscience such that the right to a prompt initial appearance was clearly established.

Because Plaintiff cannot demonstrate a violation of a clearly established right to a more prompt initial appearance based on either a state-created or Due Process Clause-created liberty interest, Defendant Heyman is entitled to summary judgment on the basis of qualified immunity with respect to Plaintiff's claim that his constitutional right to a prompt initial appearance was violated.

### C. Defendant Heyman is entitled to qualified immunity with respect to Plaintiff's claim that his transfer from UNMH to MDC violated due process.

Plaintiff argues that his transfer from UNMH to MDC violated due process because the court's Order Setting Conditions of Release stated that he remain at the hospital "until further notice," thereby creating a protected liberty interest.

The court's August 19, 2008 Order Setting Conditions of Release ordered that Plaintiff be released from custody subject to a $50,000 secured bond. *Doc. 77*, Ex. 2. Additionally, the court added a handwritten note stating "→Δ to remain in custody at UNMH – until further notice→." *Id.* Defendant Heyman argues he is entitled to qualified immunity because it was not clearly established that the Court's handwritten

note on the order created a federally protected liberty interest in Plaintiff remaining at the hospital.

As the Court explained in its prior order, it is not clear that such a state custody order can create a liberty interest protected by the Due Process Clause. *Doc. 113* at 13. Although the Supreme Court has found that state statutes can create a liberty interest when they impose restrictions on the transfer of prisoners from one facility to another, *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983), it has not addressed whether state court orders can create such interests. Likewise, the Tenth Circuit has not discussed whether a state court order can create a federally protected liberty interest for a pretrial detainee or prisoner, let alone an interest in remaining in custody in a hospital rather than being transferred to the medical section of a prison. In *Gonzales v. City of Castle Rock*, 366 F.3d 1093, 1103 (10th Cir. 2004), the Tenth Circuit found that a restraining order, in combination with Colorado statutes, could create a property interest protected by the Fourteenth Amendment. However, that decision was reversed by the Supreme Court, which held that the restraining order at issue did not create a constitutionally protected property interest. *Town of Castle Rock v. Gonzales*, 545 U.S. 748 (2005). The Tenth Circuit has not returned to the question since.

There is also no general weight of authority on the issue. The few courts that have considered this issue have found that a state court order can create a liberty interest if it is mandatory and sets specific limits on the state's ability to detain a person.

*See McGann v. Cunningham*, 315 F. Supp. 2d 150, 155 (D.N.H. 2004) (finding state court order setting release date created a liberty interest in that release date); *Walters v. Grossheim*, 990 F.2d 381, 384 (8th Cir. 1993) (finding state court order directing prison officials to reinstate inmate to Level IV of the prison created a liberty interest). In contrast, the Second Circuit in *Kulak v. City of New York* held that a state court order addressing the institutionalization of a mental patient, which directed a hospital "to arrange for a suitable facility as a less restrictive alternative," did not create a liberty interest because it did not place limits on the state's "lawful authority to confine" the patient and did not mandate the patient's transfer. 88 F.3d 63, 73 (2d Cir. 1996).

Plaintiff has the burden of demonstrating that the allegedly violated right was clearly established. However, Plaintiff's Response cites to no federal case which analyzes whether a state court order such as found in the instant case can create a federally protected liberty interest. The only cited case arguably relevant to this question is *Young v. City of Little Rock*, 249 F.3d 730 (8th Cir. 2001), where the court upheld a jury verdict compensating Plaintiff for a three-hour detention for out-processing after the judge ordered the plaintiff's release. However, in *Young*, the judge had ordered the person released because the police had arrested the wrong person entirely. *Id*. at 732. Thus, there was no probable cause to detain her at all. As such, the constitutional right that was violated was not the liberty interest created by the state court order; it was the clearly established Due Process clause right to not be detained

17

absent probable cause. Moreover, the *Young* state court order completely terminated that plaintiff's custody. It did not, as here, only restrict the location of the person's continued custody. Thus, *Young* does not aid Plaintiff in demonstrating that it was clearly established the court order in his case created a federally protected liberty interest.[3]

Assuming that the court's Order Setting Conditions of Release could create a liberty interest in Plaintiff's remaining at UNMH, it would therefore still need to include mandatory language limiting official discretion in order for it to create a protected liberty interest. Here, the court's handwritten note is far from the clear and specific mandate needed to establish a state-created liberty interest. The order includes no mandatory words such as "shall" or "must," and it is not directed toward any specific individual. Further, it is not evident to what the arrows refer or what exactly "until further notice" means. As the Court noted in its prior order, this language could simply mean that the court would be notified when Plaintiff was removed from UNMH. *Doc. 113* at 15.

The Order Setting Conditions of Release also does not place limits on law enforcement's authority to lawfully confine Plaintiff. *Id.* It is obvious from the order that Plaintiff was to remain in custody subject to a $50,000 secured bond. Therefore,

---

[3] Plaintiff also cites in passing *Davis v. Hall*, 375 F.3d 703 (8th Cir. 2004). *Davis* does not aid Plaintiff's "clearly established" argument for the same reasons that *Young* does not. There, the prisoner was detained for 57 days beyond the sentence imposed by the state judge. Again, the constitutional right violated was not the liberty interest created by a state court order but the right to not be incarcerated without any authority whatsoever.

18

when UNMH released Plaintiff, Plaintiff was still in custody and the officers would not have released him on his own recognizance at that point. Plaintiff argues that Detective Heyman should have sought permission from the court to transport Plaintiff to MDC upon his being discharged from the hospital. However, given the uncontested facts, Plaintiff fails to show that this failure rises to the level of a clearly established constitutional violation.

Because the law is not clearly established that Plaintiff had a federally protected liberty interest in remaining in custody at UNMH rather than being transferred to MDC, Detective Heyman is entitled to summary judgment on this issue on the basis of qualified immunity.

IV. CONCLUSION

Plaintiff has not demonstrated that either his delayed initial appearance or his transfer to MDC constituted violations of his clearly established due process rights. Plaintiff has therefore failed to meet his burden and Detective Heyman is entitled to qualified immunity. Wherefore, Defendants' motions for summary judgment on Count V (*docs. 121, 122*) of Plaintiff's complaint are GRANTED, and Count V is dismissed with prejudice.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by consent**