IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

STEPHAN CORDOVA,

    Plaintiff,

v.                                                    No. 11-cv-806 GBW/WPL

MATTHEW HOISINGTON,
KEVIN KEES, and JAMES FOX,

    Defendants.

## ORDER DENYING PLAINTIFF'S MOTION FOR NEW TRIAL

This matter is before the Court on Plaintiff's Motion for a New Trial (*Doc. 266*). The Court, having considered the parties' briefing (*docs. 269, 271*) and being otherwise fully advised, will deny the motion.

## LEGAL STANDARD

"The court may, on motion, grant a new trial on all or some of the issues … after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]" FED. R. CIV. P. 59(a)(1)(A). Motions for a new trial are not regarded with favor and "should only be granted with great caution." *Franklin v. Thompson*, 981 F.2d 1168, 1171 (10th Cir. 1992). Where a party presents the court with a motion for a new trial based on contentions of trial error, the alleged errors will not justify the grant of a new trial unless they are "clearly erroneous, as well as prejudicial and must have affected the substantial rights of the parties." *Atencio v. City of*

*Albuquerque*, 911 F. Supp. 1433, 1436 (D.N.M. 1995) (citing *Hinds v. Gen. Motors Corp.*, 988 F.2d 1039, 1049 (10th Cir. 1993)).

**ANALYSIS**

Plaintiff points to three broad categories of alleged error that he claims justify a new trial: (1) the improper introduction of evidence of Plaintiff's prior drug use; (2) inaccurate jury instructions on the use of force; and (3) Defendants' inappropriate trial strategy and closing argument. The Court will consider each in turn.

**A.    Plaintiff's Prior Drug Use and Other "After-Acquired" Evidence**

Plaintiff argues that the Court erred in admitting evidence of his alleged drug use and other information about Plaintiff of which the officers were not aware at the moment of the shooting for two reasons. First, because the officers were not aware of Plaintiff's drug use prior to the shooting, it could not be relevant to the reasonableness inquiry. Second, Plaintiff argues that, in any event, such evidence should have been excluded as unfairly prejudicial under Federal Rule of Evidence 403.

Despite the fact that the significant burden of establishing the propriety of a new trial rests with Plaintiff, he simply lumps all "after-acquired" evidence into this category. *See doc. 266* at 10-14 (mentioning evidence of Plaintiff's drug use, mental state, and firearm). Of course, different theories of admissibility underpinned the Court's ruling as to each of these topics. Even limiting the discussion to Plaintiff's drug use, Plaintiff would be required to address each particular incident and how Defendants sought to introduce it, as the basis for admissibility was different depending on what

2

kind of drug was at issue, as well as the parameters of Plaintiff's use of each drug. Nonetheless, the Court will attempt to address this unwieldy category with broad strokes.

Much of the evidence in this category was admitted because it was relevant to aid the jury in selecting between disputed versions of facts. *See Boyd v. City and Cty. of San Francisco*, 576 F.3d 938, 944 (9th Cir. 2009) ("In a case such as this, where what the officer perceived just prior to the use of force is in dispute, evidence that may support one version of events over another is relevant and admissible."); *Estate of Escobedo v. Martin*, 702 F.3d 388, 399-400 (7th Cir. 2012) (when a factual dispute arises as to what occurred prior to officers' use of force, "evidence unknown to officers at the time they used force is admissible to attack witness credibility" as well as "to add credibility to an officer's claim that a suspect acted in the manner described by the officer"); *Common v. City of Chicago*, 661 F.3d 940, 947 (7th Cir. 2011) (in resolving the factual disputes surrounding a use of force incident, evidence unknown to officers at the time was admissible because it "made it more likely that [the decedent] acted in the way [the officer] contended he did as opposed to the way the other witnesses contended he did"). For example, evidence of Plaintiff's peculiar behavior in the twenty-four hour period before the shooting served to corroborate the peculiar behavior described by the officers in the minutes before the shooting. Evidence of Plaintiff's firearm was relevant to Plaintiff's ownership of it, that it was not in his pocket at the time of the shooting, and that when he carried it outside it was not simply to transport

3

it from the house in accordance with his brother's restrictions on Plaintiff's possession of guns in the residence.

Other evidence in the "after-acquired" category was admitted because it was relevant to damages. The more recent psychological problems and drug use by Plaintiff were admitted on this theory. As Plaintiff was seeking mental and emotional damages, the Court concluded that such evidence was relevant to the jury's calculations regarding those damages, should they find liability.

Finally, Plaintiff's drug use was also admitted as relevant to Plaintiff's perception of relevant events. Although Plaintiff eventually chose not to testify, evidence of his drug use was admissible on this basis throughout Plaintiff's case-in-chief.[1]

Not only did the Court find this evidence relevant, but the probative value was not substantially outweighed by a danger of unfair prejudice to Plaintiff.

Plaintiff has not persuaded the Court that these evidentiary rulings were in error. Obviously then, they cannot form the basis for granting the motion for new trial.

**B.  Jury Instructions on Use of Force**

Plaintiff's primary argument regarding jury instructions is that the Court erred in instructing the jury regarding the requirement that police officers warn suspects before using deadly force. As is more fully described in the Court's Order Denying Motion for Judgment as a Matter of Law, the Court concludes that Plaintiff has failed to show that it is clearly established that, if any warning is feasible, it must always include an explicit

---

[1] Until Plaintiff rested, all indications from Plaintiff's counsel were that Plaintiff would testify.

"statement of imminent destruction." *See doc. 274 at 3-5*. Instead, the law requires "some warning" if feasible. *Tennessee v. Garner*, 471 U.S. 1, 11-12 (1985). Moreover, the Tenth Circuit has "treated orders to drop a weapon … as sufficient warning when '[e]vents were unfolding extremely quickly.'" *Samuel v. City of Broken Arrow*, 506 F. App'x 751, 754 (10th Cir. 2012) (quoting *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1311 (10th Cir. 2009)). The jury was instructed in accordance with these precedents. As the Court finds no error in the instruction on the warning requirement, it does not provide the basis for a new trial.

Plaintiff's second argument is that Instruction 13 was confusing because it could be read as not requiring (1) an <u>immediate</u> threat to officer or public safety, or (2) that a warning be given, if feasible. The flaw in Plaintiff's argument is that it is based on pulling one sentence completely out of the context of the instructions. It is well established that, in reviewing jury instructions, the Court's task is to view the charge to the jury as a whole. *See, e.g., United States v. Park*, 421 U.S. 658, 674-75 (1975). Here, one need not even look to the other instructions – the challenged instruction as a whole correctly instructs the jury. First, the instruction focused the jury on the moments just before the shooting. Consequently, the question of whether Plaintiff was a threat of serious physical harm to the officers was necessarily referring to that moment – in other words, "immediate." Moreover, the omission of the word "immediate" from the challenged sentence could not have confused the jury under the facts of this case. *See id.*; *see also United States v. Bedford*, 536 F.3d 1148, 1152 (10th Cir. 2008) ("jury instructions

[are reviewed] as a whole and view[ed] in the context of the entire trial to determine if they 'accurately state the governing law and provide the jury with an accurate understanding of the relevant legal standards and factual issues in the case'"). Defendants' theory of the case was that they shot Plaintiff because he pulled the firearm out of his pocket and began to point it at the officers. Plaintiff's theory was that he did neither. Unsurprisingly, Plaintiff did not argue that the alleged raising of the firearm did not constitute an "immediate" threat; only that it did not happen.[2] Finally, on the issue of the warning, soon after the challenged sentence in Instruction 13, the jury was unambiguously told that: "But, when possible under the circumstances, an officer must give some warning before using deadly force. An order to drop a weapon is sufficient in cases where events are unfolding extremely quickly." *Doc. 254* at 16-17. Reviewed as a whole, the jury instructions were not confusing, let alone so clearly erroneous as to justify a new trial.

### C. Defendants' Trial Strategy and Closing Argument

Plaintiff alleges four bases for a new trial relating to Defendants' trial strategy and closing argument: (1) Defendants improperly introduced comparative negligence into the trial; (2) Defendants broke the "golden rule" in closing argument;

---

[2] Plaintiff did argue that Plaintiff was not a sufficiently immediate threat to justify approaching him when he left the house in an attempt to prevent him from driving away. However, the jury was instructed that, even if they found the use of deadly force otherwise appropriate, if the officers deliberately or recklessly created the need for deadly force, the jury must find for Plaintiff. Plaintiff does not object to the jury instructions on that point.

6

(3) Defendants improperly disparaged the legal system in closing argument; and

(4) Defendants improperly disparaged opposing counsel in closing argument.

        1.        <u>Comparative Negligence</u>

Plaintiff primarily grounds this argument on the fact that Defendants introduced evidence that, from the officers' perspective, nothing prevented Plaintiff from complying with their orders immediately prior to the shooting. This evidence is unquestionably admissible because an individual's failure to comply with an officer's commands is relevant when considering the threat posed by that individual. *See Thomson v. Salt Lake Cty.*, 584 F.3d 1305, 1314 (10th Cir. 2009). Certainly, if something obvious were preventing the individual from complying, it would make the failure to comply far less threatening. Thus, the absence of something preventing compliance is relevant. In fact, given Plaintiff's focus on the officers' failure to properly warn, this evidence would also be admissible to rebut the argument that more elaborate warnings would have been efficacious. So, while the Court agrees that comparative negligence is inapplicable to Plaintiff's § 1983 claim, the evidence was not introduced under such a theory. Moreover, the Court does not find that Defendants argued comparative negligence in their closing. Defendants did not contend that the shooting was justified merely because of Plaintiff's failure to comply. They argued that it was justified because, after repeatedly failing to comply, he began to raise a firearm at the officers. As the Court finds no error, this argument provides no support for a new trial.

## 2. "Golden Rule"

Plaintiff argues that defense counsel violated the "golden rule" in closing argument by exhorting the jury to place themselves into the context of the case in two ways: (a) asking that the jurors place themselves in the position of the residents in the neighborhood where the shooting occurred and implying that they would be safer as a result of the shooting;[3] and (b) asking the jurors to place themselves in the position of the Defendant officers during the incident. A "golden rule" argument is where the jury is asked to place itself in a party's shoes. Under Tenth Circuit precedent, while a party may not rely on a "golden rule" argument in a plea for damages, such arguments are not improper on the issue of liability. *Shultz v. Rice*, 809 F.2d 643, 651–52 (10th Cir. 1986).

As neither of these arguments was directed at the issue of damages, neither would run afoul of the prohibition against "golden rule" arguments.[4] Therefore, Plaintiff is not entitled to a new trial on this ground.

---

[3] Specifically, counsel argued that the officer "put himself at risk to make sure none of you were at risk, no one in that neighborhood was at risk."

[4] Nonetheless, the Court sustained Plaintiff's sole objection during closing argument, which was directed at the first of these arguments, in an abundance of caution to ensure that counsel's arguments did not "encourage[] the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than the evidence." *Ivy v. Security Barge Lines, Inc.*, 585 F.2d 732, 741 (5th Cir. 1978) (quoted with approval in *Blevins v. Cessna Aircraft Co.*, 728 F.2d 1576, 1580 (10th Cir. 1984)). Of course, this fact further undermines the claim that Plaintiff should be granted a new trial on this ground.

### 3. Comments on Legal System

Plaintiff next claims that defense counsel argued that Plaintiff should not have pursued his action against Defendants. Indeed, as the cases to which Plaintiff cites attest, this type of argument is prohibited. However, the argument to which Plaintiff points did no such thing and was, in fact, entirely proper argument.

This complaint by Plaintiff is based on counsel's argument that, if the Defendant officers had not attempted to stop Plaintiff from departing and Plaintiff had injured someone in a car accident, the injured person would have filed a lawsuit against the officers. Plaintiff's complaint misunderstands the point of counsel's argument. Defense counsel was not decrying the future lawsuit, nor railing against litigation in general as a means to remedy harms. And defense counsel at no point attacked Plaintiff for bringing his claim. Instead, defense counsel's comment about the potentially injured person's lawsuit was: "That person sues, sues Mr. Cordova, that would make sense, and sues the police. But that would make sense too, because the police knew they had an irrational man who was armed and they just let him go." His point was that the injured person would have a **legitimate** claim because the officers should have foreseen that Plaintiff was not in a state where he should be driving. This argument was in direct response to Plaintiff's theory that the officers' concerns over Plaintiff departing were overblown. As this argument was proper, it provides no support for the motion for new trial.

#### 4. Comments on Opposing Counsel's Argument

Plaintiff's final claim relating to the closing argument is that "Defendants personally attacked Plaintiff's counsel and her closing argument and argued that her perspective on the case was tainted by emotions and passion and not premised on facts." *Doc. 266* at 8. Certainly, "[f]airness to the parties and our system of justice dictates that 'there be limits to pleas of pure passion and there must be restraints against blatant appeals to bias and prejudice.'" *Whittenburg v. Werner Enter. Inc.*, 561 F.3d 1122, 1128 (10th Cir. 2009). Consequently, "[i]t is not the function of closing argument to debase, degrade or impugn the veracity of a litigant or opposing counsel." *Id.* at 1130 (quotations and citations omitted).

Plaintiff cites to two places in defense counsel's closing argument where he referenced the passion and emotion of opposing counsel's argument. *Doc. 266* at 9. Having observed the closing argument firsthand, the Court finds that these comments do not cross the line from advocacy to personal attacks on opposing counsel, let alone were they so outrageous that they would support granting a new trial.

### CONCLUSION

Plaintiff has failed to demonstrate any trial court errors that are "clearly erroneous," "prejudicial," and "affect[ing his] substantial rights." Wherefore, Plaintiff's Motion for a New Trial (*Doc. 266*) is DENIED.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by consent**